NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-13-1256-DKiTa |
| | ) | |
| JACQUELINE RODRIGUEZ, | ) | Bk. No. 12-23296-SC11 |
| | ) | |
| Debtor. | ) | Adv. Proc. No. 13-01090-SC |
| _____ | ) | |
| | ) | |
| BLADE ENERGY PTY LTD.; CLAIRE | ) | |
| ENERGY PTY LTD.; DEREK M. | ) | |
| WILLSHEE; JAMES R. ZADKO, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACQUELINE RODRIGUEZ, | ) | **M E M O R A N D U M**[1] |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on November 21, 2013
at Pasadena, California

Filed - December 19, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding

_____

Appearances:   Todd B. Becker, Esq. argued for Appellants;
Julian Bach, Esq. argued for Appellee.

_____

Before:  DUNN, KIRSCHER and TAYLOR, Bankruptcy Judges.

_____

    [1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The bankruptcy court dismissed Appellants' adversary proceeding with prejudice as a sanction for their failure, through counsel, to comply with initial discovery rules and the bankruptcy court's local procedural rules. We AFFIRM.

## I. FACTS

### A. Background

Jacqueline Rodriguez filed a chapter 11[2] petition on November 20, 2012. Blade Energy Pty Ltd. and its Chief Executive Officer, Derek M. Willshee, and Claire Energy Pty Ltd. and its Chief Executive Officer, James R. Zadko (collectively, "Appellants"), filed an adversary proceeding against Ms. Rodriguez on March 5, 2013, seeking a determination that an alleged debt Ms. Rodriguez owed them was nondischargeable in her bankruptcy case pursuant to §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).[3]

Appellants' claims against Ms. Rodriguez were based upon her status and alleged actions as a shareholder and principal of Olecram LLC ("Olecram"), which Ms. Rodriguez owned with her husband,

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and the Local Rules for the Bankruptcy Court for the Central District of California are referred to as "LBR's."

[3] Because this is an appeal on procedural grounds rather than substantive law, we do not quote the text of the statutes pursuant to which Appellants were seeking relief in the adversary proceeding. It is sufficient to note that they implicate Ms. Rodriguez's discharge.

2

Flavio Rodriguez.[4]  Olecram is a California limited liability company which brokered large financial transactions for businesses in need of funding.

Appellants alleged that, beginning in May 2006, they engaged the services of Olecram to secure operating capital in the form of secured loans.  They paid Olecram $500,000 to obtain a $200,000,000 line of credit on their behalf to fund oil projects in Turkey. Appellants further alleged that, in exchange for this fee, they received false and fraudulent banking documents and guarantee letters, but no funds.  They also alleged, without specifying how, that they were lulled and beguiled into pursuing a second funding opportunity through Olecram, such that in July of 2008 they paid $250,000 to Olecram in order to obtain $20,000,000 in emergency funding while waiting for receipt of the main loan proceeds.  Again, Appellants received no loan funds as a result of the second payment to Olecram.

---

[4]  Appellants name Ms. Rodriguez as the defendant both in the caption and in the introductory paragraph of their complaint and assert that they are seeking "redress for a scheme by which the defendant, acting in concert with other entities and individuals, deceived and defrauded [Appellants] and misappropriated [Appellants'] property."  In addition to Mr. Rodiguez and Olecram, Appellants name as the "other entities and individuals" involved in the scheme JNDDC LLC, Jeffrey Spence, David McGirt and Julian Bach. Mr. Bach was Ms. Rodriguez's attorney in the adversary proceeding and continues as her counsel in this appeal.  Mr. Bach also was counsel to Olecram and to Mr. and Ms. Rodriguez at all relevant times.

After identifying the "other entities and individuals," the complaint thereafter alleges conduct of the "defendants," not of Ms. Rodriguez specifically.

Notwithstanding their lack of success in obtaining financing through Olecram's efforts, in November of 2009, Appellants again sought Olecram's assistance in obtaining a $10,000,000 loan to fund an oil project in Bakersfield, California. Rather than paying a fee to Olecram for obtaining funds for the Bakersfield project on their behalf, the Appellants entered into an agreement with Olecram pursuant to which Olecram would receive a 50% interest in the Bakersfield project. Ultimately, only $386,000 was obtained to finance the Bakersfield project.

Further, Appellants alleged they learned in June of 2010 that these funds were not obtained from a lender who had agreed to finance the Bakersfield project but instead from $1,500,000 that had been misappropriated from a local real estate company. Appellants asserted that when they learned of the "defendants'" illegal and fraudulent conduct, they removed "defendants" from the Bakersfield project and terminated all business dealings with Ms. Rodriguez "and her affiliates and cooperating persons and entities." The complaint sought: (1) damages in the amount of $750,000, representing the fees paid to Olecram to secure funding for the Turkey project, together with lost prospective profits and damage to their business reputation when the Turkey and Bakersfield projects collapsed because of a lack of funding; and (2) a determination that the debt represented by these damages was nondischargeable in Ms. Rodriguez's bankruptcy case.

B.   Procedure

Appellants served the adversary complaint and summons on

4

Ms. Rodriguez on March 7, 2013. As required by the LBRs, Appellants served a copy of the bankruptcy court's "Early Meeting of Counsel and Status Conference Instructions" ("Rule 26 Instructions") with the summons and complaint.

The Rule 26 Instructions notified all parties that compliance with LBR 7026-1 was required. It further mandated that the parties were to meet and confer as contemplated by Civil Rule 26(f) ("Rule 26 Meeting") "at least 21 days before the status conference date [("Initial Status Conference")] set forth in the summons" and detailed what was to be discussed and accomplished at the Rule 26 Meeting. The Rule 26 Instructions also directed the filing of a Joint Status Report with respect to the Rule 26 Meeting "within the time frames specified within Local Rule 7016-1(a)(2)." Alternatively, the Rule 26 Instructions required Appellants to file a Unilateral Status Report seven days prior to the Initial Status Conference if Ms. Rodriguez had not filed and served an answer to the complaint.

Paragraph 10 of the Rule 26 Instructions stated in bold print the sanctions the bankruptcy court could impose if the Rule 26 Instructions were not complied with:

> Failure to comply with these instructions may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding. The failure of either party to cooperate in the preparation or timely filing of a Joint Status Report or appear at the status conference may result in the imposition of sanctions under [Local Rule] 7016-1(f) or (g).

The summons provided notice that the Initial Status Conference was set for May 23, 2013, thereby establishing May 2, 2013 as the

5

deadline for the Rule 26 Meeting, May 9, 2013 as the deadline for filing a Joint Status Report, and May 16, 2013 for filing a Unilateral Status Report if no Joint Status Report had been filed. The summons also provides an explicit warning of the consequences of failing to file a timely status report:

> You must comply with [Local Rule] 7016-1, which requires you to file a joint status report and to appear at a status conference. All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court-approved joint status report form is available on the court's website ([Local] form F 7016-1.1) with an attachment for additional parties if necessary ([Local] form F 7016-1.1a). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

(Emphasis in original.)

Ms. Rodriguez did not file an answer to the complaint, but instead, on April 4, 2013, filed a motion ("Dispositive Motion") asserting alternatively that the complaint should be dismissed for failure to state a claim upon which relief could be granted or that she was entitled to judgment as a matter of law. The hearing on the Dispositive Motion was set for the same time as the initial status conference in the adversary proceeding.

The record reflects that Appellants opposed the Dispositive Motion on May 2, 2013. Of the documents filed in opposition, however, only one was provided for our consideration on appeal.

6

That document is the "Declaration In Support of Request for Denial or Continuance of Summary Judgment Under [Civil Rule] 56(d)" ("First Becker Declaration"). In the First Becker Declaration, Todd B. Becker, counsel for Appellants, asserted that the Dispositive Motion was "premature due to the total lack of discovery in this action" and that "discovery is essential to present further evidence to the court of a genuine dispute in this matter."

Significantly, after serving the summons and complaint, Mr. Becker took no action prior to the deadline for the Rule 26 Meeting to comply with the Rule 26 Instructions. Mr. Bach sent written correspondence to Mr. Becker on May 2, 2013, by both facsimile transmission and U.S. Mail, in which he requested that the Rule 26 Meeting be scheduled and that the Joint Status Report be prepared. Receiving no response, Mr. Bach sent follow-up correspondence, again by facsimile transmission and U.S. Mail, on May 6, 2013, with the same result. In both letters, Mr. Bach explicitly advised Appellants' counsel of the requirements of the bankruptcy court's local rules with respect to the timing of the Rule 26 Meeting and the filing of a Joint Status Report.

On May 9, 2013, Ms. Rodriguez filed a Unilateral Status Report ("Rodriguez Status Report") supported by the Declaration of Mr. Bach ("Bach Declaration"), which advised the bankruptcy court that no Rule 26 Meeting had taken place, and that "Counsel for Plaintiffs has been totally non-responsive regarding the Rule 26 [Meeting] and/or [Local Rule] 7026-1 making it difficult for [Ms. Rodriguez] to speculate as to how it is that she has any debt to these

7

'Plaintiffs' and/or that any such debt is nondischargeable." The Rodriguez Status Report and the Bach Declaration were served on Mr. Becker.

Mr. Becker finally sent Mr. Bach a letter via facsimile transmission on May 14, 2013 ("May 14 Letter"), outlining Appellants' views on the issues to be discussed at the Rule 26 Meeting.[5] That letter proposed that initial disclosures be made within 14 days following the Rule 26 Meeting and requested dates for taking the depositions of both Ms. Rodriguez and Mr. Rodriguez. In response to the May 14 Letter, Mr. Bach left voice mail messages for Mr. Becker on both May 15 and May 16, requesting a Rule 26 Meeting by telephone. Although those messages asked for a return telephone call and expressed hope that a Joint Status Report still could be prepared, Mr. Becker did not contact Mr. Bach on either of those dates. Mr. Becker alleged that he called Mr. Bach's office twice after sending the May 14 Letter, finally leaving a voice mail message for Mr. Bach on May 17, 2013. The record reflects that Mr. Bach did not respond to that voice mail message because he was out of the office on May 17.[6] However, Mr. Bach sent Mr. Becker a

---

[5] The May 14 Letter appears to suggest that there was nothing to discuss at a Rule 26 Meeting because the claims and positions of the parties were, in Mr. Becker's view, adequately set forth in the Dispositive Motion and Appellants' opposition thereto.

[6] At Mr. Becker's request, Mr. Bach provided a letter confirming that Mr. Becker had left a voice mail message on May 17, 2013. That letter also confirmed that Mr. Bach was out of the office on that day.

8

letter on May 19, 2013, which again requested that Mr. Becker contact Mr. Bach and which also pointed out that no status report had been filed on behalf of Mr. Becker's clients.

Ultimately, the Rule 26 Meeting took place by telephone on May 20, 2013. It was of limited usefulness. Mr. Bach "got a fairly quick, clear impression that [Mr. Becker] had limited to no familiarity with the claims set forth in the Complaint." On May 20, 2013, following the Rule 26 Meeting, Appellants filed their Unilateral Status Report ("Appellants' Status Report"), indicating that the Rule 26 Meeting had taken place on that same date.

On the afternoon before the Initial Status Conference, the bankruptcy court posted its tentative ruling evincing an intent to dismiss the adversary proceeding because Appellants had not filed a status report. At 6:00 p.m. on May 22, 2013, the evening before the Initial Status Conference, Mr. Becker filed a declaration ("Second Becker Declaration") stating that the Appellants' Status Report in fact had been filed on May 20, 2013, and that a chambers copy had been delivered "thereafter" to the bankruptcy court.[7] The Second Becker Declaration states that Appellants' counsel had not earlier had an opportunity to meet and confer.[8] The Second Becker

---

[7] The messenger service delivered the copy on May 21, 2013 at 2:45 p.m., less that 48 hours prior to the Initial Status Conference.

[8] Mr. Becker also served on May 22, 2013, a notice of Ms. Rodriguez's deposition, which he unilaterally set for June 27, 2013, because the timing of the deposition had not been discussed at the Rule 26 Meeting.

9

Declaration was cast in terms to suggest that Mr. Bach had been dilatory in facilitating the Rule 26 Meeting and in complying with the LBRs with respect to the filing of a status report.

Mr. Bach filed a supplemental declaration ("Second Bach Declaration") in support of the Rodriguez Status Report at 7:20 a.m. on the day of the Initial Status Conference, through which he informed the bankruptcy court of the numerous efforts he had undertaken to engage Mr. Becker in the Rule 26 process.

On May 23, 2013, the bankruptcy court conducted the Initial Status Conference, opening with a statement that it wanted to create a time line for the record. The bankruptcy court noted that Appellants' Status Report was filed only three days before the Initial Status Conference. The bankruptcy court then took issue with the content of Appellants' Status Report to the extent it answered in the affirmative the question, "Have counsel met and conferred in compliance with [Local Rule] 7026-1?" Although Mr. Becker initially (and vigorously) argued that he had complied with the meet and confer requirements of the Civil Rules and the LBRs, he ultimately (and reluctantly) conceded that he had not "technically" complied because the Rule 26 Meeting was not conducted within the time specified by the LBRs, nor was Appellants' Status Report timely filed. The bankruptcy court also took Appellants' counsel to task for the content of the Second Becker Declaration, which "on a cold read" suggested that the only status report filed in the adversary proceeding was Appellants' Status Report.

The bankruptcy court then asked Mr. Becker to explain the

10

circumstances that prevented him from having an earlier opportunity to meet and confer with opposing counsel as averred in the Second Becker Declaration. Mr. Becker responded that his failure to meet and confer timely was the result of an error in calendaring deadlines in the adversary proceeding. When the bankruptcy court suggested that the several attempts Mr. Bach had made to alert Mr. Becker to the required deadlines and his responsibilities in relation to those deadlines undercut any "excuse" of miscalendering, Mr. Becker blamed his lack of compliance on the failure of his associate to advise him of Mr. Bach's communications.[9] He then assured the bankruptcy court that both the calendaring issue and the communication issue within his office had been resolved upon review of the bankruptcy court's tentative ruling.

Notwithstanding Mr. Becker's request that the bankruptcy court impose monetary sanctions upon him rather than impose a dismissal sanction to the detriment of his clients, the bankruptcy court dismissed the adversary proceeding with prejudice.[10] While the bankruptcy court created the time line to establish a record that in

[9] Mr. Bach pointed out for the record that Mr. Becker had stated in the First Becker Declaration: "I . . . am counsel for plaintiff [sic] in this adversary action. I have handled this case since its inception."

[10] In commenting on the fact that the adversary proceeding was dismissed with prejudice, the bankruptcy court stated: "And I'll tell you why it's with prejudice. It has nothing to do with my determination, it's because you can't file it again. You're out of time on the statute of limitations." Tr. of May 23, 2013 Hr'g at 29:5-8. See Rule 4007(c).

11

the adversary proceeding, Appellants had wholly failed to comply with the time requirements of the Civil Rules and the Local Rules in the pretrial proceedings, the bankruptcy court also expressed a desire to address a "systemic" issue by imposing greater sanctions than the monetary sanctions it typically imposed on counsel, which, in the view of the bankruptcy judge, had proven ineffective both over time and in the case before him.[11] Appellants filed a timely notice of appeal from the dismissal order.

## II.  JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(b) and (k).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Whether the bankruptcy court abused its discretion when it dismissed the adversary proceeding with prejudice.

## IV.  STANDARDS OF REVIEW

The bankruptcy court's dismissal of an adversary proceeding based upon plaintiffs' failure to prosecute is reviewed for an abuse of discretion.  Al-Torki v. Kaempen, 78 F.3d 1381, 1384 (9th Cir. 1996); Moneymaker v. CoBEN (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994).

We apply a two-part test to determine whether the bankruptcy

---

[11]  "My intention and my inclination is to dismiss this case. I'm tired.  I am just tired of in and out, daily, people don't – they're not caring about the Local Rules."  Tr. of May 23, 2013 Hr'g at 16:20-22.

12

court abused its discretion. <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. <u>Id.</u> Then, we review the bankruptcy court's fact findings for clear error. <u>Id.</u> at 1262 & n.20. We must affirm the bankruptcy court's fact findings unless we conclude that they are "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" <u>Id.</u> "Under the 'clear error' standard, we accept findings of fact unless the findings leave 'the definite and firm conviction that a mistake has been committed by the trial judge.'" <u>Wolkowitz v. Beverly (In re Beverly)</u>, 374 B.R. 221, 230, <u>aff'd in part & dismissed in part</u>, 551 F.3d 1092 (9th Cir. 2008), citing <u>Latman v. Burdette</u>, 366 F.3d 774, 781 (9th Cir. 2004).

## V. DISCUSSION

Resolution of this appeal requires an examination of the interplay between and among various Civil Rules, Rules, and LBRs which operate to ensure the efficient adjudication of adversary proceedings.

Rule 7016 provides that Civil Rule 16 applies in adversary proceedings. Civil Rule 16(a) identifies several purposes for setting pretrial conferences, such as the Initial Status Conference in the instant dispute. Those purposes relevant to this appeal include expediting disposition of the adversary proceeding and establishing early and continuing control so that the adversary proceeding will not be protracted because of lack of management.

13

See Civil Rule 16(a)(1) and (2). LBR 7016-1 serves to implement Civil Rule 16's purposes in adversary proceedings, and provides:

7016-1. STATUS CONFERENCE, PRETRIAL, AND TRIAL PROCEDURE

(a) Status Conference. In any adversary proceeding, the clerk will issue a summons and notice of the date and time of the status conference.

(1) Who Must Appear. Each party appearing at any status conference must be represented by either the attorney (or party, if not represented by counsel) who is responsible for trying the case or the attorney who is responsible for preparing the case for trial.

(2) Contents of Joint Status Report. Unless otherwise ordered by the court, at least 14 days before the date set for each status conference the parties are required to file a joint status report discussing the following:
(A) State of discovery, including a description of completed discovery and detailed schedule of all further discovery then contemplated;
(B) Deadline for all discovery to be completed, including the date by which all responses to discovery requests are due;
(C) A schedule of then contemplated law and motion matters;
(D) Prospects for settlement;
(E) A proposed date for the pretrial conference and/or the trial;
(F) Whether counsel have met and conferred in compliance with LBR 7026-1, and if so, the date of the conference;
(G) Any other issues affecting the status or management of the case; and
(H) Whether the parties are interested in alternative dispute resolution.

(3) Unilateral Status Report. If any party fails to cooperate in the preparation of a joint status report and a response has been filed to the complaint, each party must file a unilateral status report not less than 7 days before the date set for each status conference, unless otherwise ordered by the court. The unilateral status report must contain a declaration setting forth the attempts made by the party to contact or obtain the cooperation of the non-complying party.

Rule 7026 provides that Civil Rule 26 applies in adversary

14

proceedings.  Civil Rule 26 provides in relevant part:

> (f) <u>Conference of the Parties; Planning for Discovery</u>.
> (1) <u>Conference Timing</u>.  Except in a proceeding exempted
> from initial disclosure under [Civil] Rule 26(a)(1)(B) or
> when the court orders otherwise, the parties must confer
> as soon as practicable - and in any event at least 21 days
> before a scheduling conference is to be held . . . .

LBR 7026-1 sets out in detail the obligations of the parties to an adversary proceeding to participate in discovery.

> LBR 7026-1. <u>DISCOVERY</u>
>
> (a) <u>General</u>. Compliance with [Rule] 7026 and this rule is
> required in all adversary proceedings.
>
> (1) <u>Notice</u>. The plaintiff must serve with the summons and
> complaint a notice that compliance with [Rule] 7026 and
> this rule is required.
>
> (2) <u>Proof of Service</u>. The plaintiff must file a proof of
> service of this notice together with the proof of service
> of the summons and complaint.
>
> (b) <u>Discovery Conference and Disclosures</u>.
>
> (1) <u>Conference of Parties</u>. Unless all defendants default,
> the parties must conduct the meeting and exchange the
> information required by [Rule] 7026 within the time limits
> set forth therein.
>
> (2) <u>Joint Status Report</u>. Within 7 days after such meeting,
> the parties must prepare a joint status report containing
> the information set forth in LBR 7016-1(a)(2). The joint
> status report will serve as the written report of the
> meeting required by [Rule] 7026.

The consequences of failing to comply with the foregoing Rules, Civil Rules, and LBRs also are explicit within their terms. LBR 7016-1 provides:

> (f) <u>Sanctions for Failure to Comply with Rule</u>. In addition
> to the sanctions authorized by [Civil Rule] 16(f), <u>if a
> status conference statement</u> or a joint proposed pretrial
> stipulation <u>is not filed</u> or lodged <u>within the times set
> forth in subsections (a)</u>, (b), or (e), respectively, <u>of</u>

15

this rule, the court may order one or more of the following:

(1) A continuance of the trial date, if no prejudice is involved to the party who is not at fault;

(2) Entry of a pretrial order based [upon] conforming party's proposed description of the facts and law;

(3) An award of monetary sanctions including attorneys' fees against the party at fault and/or counsel, payable to the party not at fault; and/or

(4) An award of non-monetary sanctions against the party at fault including entry of judgment of dismissal or the entry of an order striking the answer and entering a default.

(g) Failure to Appear at Hearing or Prepare for Trial. The failure of a party's counsel (or the party, if not represented by counsel) to appear before the court at the status conference or pretrial conference, or to complete the necessary preparations therefor, or to appear at or to be prepared for trial may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or as to the entire proceeding, or the proceeding may be dismissed.

(Emphasis added.)  LBR 7026-1(4) provides:

(4) Cooperation of Counsel; Sanctions. The failure of any counsel either to cooperate in this procedure, to attend the meeting of counsel, or to provide the moving party the information necessary to prepare the stipulation required by this rule within 7 days of the meeting of counsel will result in the imposition of sanctions, including the sanctions authorized by [Civil Rule] 7037 and LBR 9011-3.

(Emphasis added.)

It is undisputed that Appellants were required to participate in the Rule 26 Meeting no later than May 2, 2013, and that they were to file either a Joint Status Report no later than May 9, 2013, or a Unilateral Status Report no later than May 16, 2013.  They met none of these deadlines.  Appellants emphasize that while the deadlines

16

were not met, a Rule 26 Meeting was held and a Unilateral Status Report was filed before the Initial Status Conference. They assert that dismissal of the adversary proceeding was an excessive sanction, particularly in light of the fact that the adversary proceeding had been pending for less than three months and the dismissal occurred at the Initial Status Conference.

It is true that "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986). "Nevertheless, we will overturn a dismissal sanction only if we have a definite and firm conviction that it was clearly outside the acceptable range of sanctions." Malone v. U.S. Postal Service, 833 F.2d 128, 130 (9th Cir. 1987)(citation omitted).

As the Ninth Circuit stated in Malone, there are five factors a trial court must weigh in determining whether to dismiss a case for lack of prosecution. These include: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendant; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Malone, 833 F.2d 130; Thompson v. Hous. Auth., 782 F.2d 829, 832 (9th Cir.), cert. denied, 479 U.S. 829 (1986).

Because the bankruptcy court did not make explicit findings to show it specifically considered the Malone factors in imposing a dismissal sanction, we review the record independently. Malone, 833 F.2d at 130. In this case, standing alone in Appellants' favor

17

is the public policy favoring disposition of cases on their merits. Notwithstanding this factor, the record supports the imposition of the dismissal sanction.

First, as identified above, the expeditious resolution of litigation and the court's need to manage its docket are two of the express purposes of Civil Rule 16, pursuant to which the obligations on Appellants arose. Judicial resources are stretched thin. Without procedural rules to manage and move voluminous caseloads through the system, the public interest will suffer. As the adage goes: "Justice delayed is justice denied." The record reflects that Mr. Becker requested a continuance of resolution of the Dispositive Motion on the basis that discovery was needed at a time when he still was two weeks away from initiating any attempt to comply with the Rule 26 Meeting requirement.

Second, the bankruptcy court clearly considered the adequacy of less drastic sanctions.[12] The bankruptcy court stressed that the problem of missed deadlines had become systemic. That Mr. Becker did not take seriously the obligations imposed upon his clients by the collective rules governing pretrial proceedings in adversary proceedings until dismissal of the adversary proceeding was imminent

---

[12] A warning that failure to follow a procedure can result in dismissal of an adversary proceeding supports a determination that a court has considered alternative sanctions. See Buss v. Western Airlines, Inc., 738 F.2d 1053, 1054 (9th Cir. 1984), cert. denied, 469 U.S. 1192 (1985). LBR 7016-1(f) and (g) and LBR 7026-1(4) all provided notice that dismissal was a possible sanction for noncompliance with the rules.

18

is evident in the record. Not only did Mr. Becker not heed the Rule 26 Instructions or the specific requirements of the various iterations of [Civil Rules] 16 and 26, he also ignored the multiple attempts by Mr. Bach to gain his cooperation in moving the adversary proceeding forward. When challenged by the bankruptcy court on his missteps, Mr. Becker had difficulty understanding, in effect, what all the fuss was about. This lack of comprehension of the impact of dilatory practice on the operation of a trial court is exactly why a sanction stronger than a monetary sanction was warranted in this case. As observed by the bankruptcy court, in a finding that we are not in a position to challenge, the practice culture of the bar that appears before the bankruptcy court appears to have relegated monetary sanctions for noncompliance with procedural rules to a cost of doing business.

Third, the failure to prosecute the adversary proceeding in accordance with the rules governing the initial discovery conference and the formulation of a joint status report prejudiced Ms. Rodriguez. As stated in the Rodriguez Status Report, Ms. Rodriguez filed the Dispositive Motion because she did not believe she owed any obligation to Appellants. Mr. Becker's non-responsiveness regarding the Rule 26 Meeting made it difficult for Ms. Rodriguez to speculate "how it is that she has any debt to [Appellants] and/or that any such debt is nondischargeable." The fact that the pending adversary proceeding implicated Ms. Rodriguez's discharge required vigilant prosecution to ensure prompt resolution.

VI.   CONCLUSION

In light of the <u>Malone</u> factors, we do not have a definite and firm conviction that the dismissal sanction was clearly outside the acceptable range of sanctions.  <u>Chism v. Nat'l Heritage Life Ins. Co.</u>, 637 F.2d 1328, 1331 (9th Cir. 1981).  Accordingly, we AFFIRM.[13]

---

[13]  Shortly before oral argument in this appeal, the Appellants filed the "Declaration of Garrett M. Brief, Esq. Re: Current Status Of Underlying Bankruptcy Case" ("Brief Declaration").  The Brief Declaration advised, among other things, that Ms. Rodriguez's chapter 11 case had been converted to chapter 7 by order entered on November 19, 2013.  At oral argument, Appellants cited <u>Classic Auto Refinishing, Inc. v. Marino (In re Marino)</u>, 181 F.3d 1142, 1144-46 (9th Cir. 1999), as establishing the qualified proposition that the conversion of a bankruptcy case from chapter 11 to chapter 7 authorizes the filing of a new nondischargeability complaint in the chapter 7 case, notwithstanding that a nondischargeability complaint had been filed but subsequently dismissed with prejudice as untimely in the chapter 11 case.  <u>See</u> Rule 1019(2)(A).

The subsequent conversion of the case does not render the bankruptcy court's decision to declare the dismissal of the adversary proceeding "with prejudice" on limitations grounds error within the context of the appeal before us.