In re William EISEN, Debtor.

Richard MONEYMAKER, Appellant,

v.

Melvyn J. CoBEN, Appellee.

Nos. 92–15947, 92–15948.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1993.

Decided Aug. 9, 1994.

1448

Cindy Lee Hill, Sacramento, CA, for appellee.

Before: HUG, FARRIS, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

In this appeal, we must decide whether the bankruptcy court properly dismissed this case for failure to prosecute under Fed. R.Civ.P. 41(b). We have jurisdiction under 28 U.S.C. § 1293(a). Because we find dismissal warranted in this case, we affirm the decision of the Bankruptcy Appellate Panel, which affirmed the bankruptcy court's dismissal of the action.

## I. FACTS AND PRIOR PROCEEDINGS

On February 18, 1982, an involuntary petition in bankruptcy under Chapter 11 was filed on behalf of Golden Plan of California, Inc. and its related entities ("Golden"). Appellee Melvyn CoBen ("CoBen") is the trustee of the Golden bankruptcy estate. Numerous deeds of trust were included in the estate's assets, including several against the properties which are the subject of the instant appeal. In or around 1984, Golden began foreclosure proceedings against those properties.

On September 12, 1984, William Eisen ("Eisen") filed a Chapter 11 petition in bankruptcy. On December 18, 1984, this Chapter 11 petition was converted to a Chapter 7, and Appellant Richard Moneymaker ("Moneymaker") became the trustee of the Eisen bankruptcy estate.

On December 20, 1985, CoBen filed an adversary proceeding against Eisen in Golden's bankruptcy case seeking a declaration that Golden was the owner of the subject deeds of trust and properties and that Golden's bankruptcy was the proper forum for determining its interest. CoBen, as trustee, also sought turnover of the subject properties and an order finding defendant Eisen in

---

William Eisen, in pro. per.

Vincent J. Quigg, Los Angeles, CA, for appellant.

contempt for violating the automatic stay imposed in Golden's bankruptcy case.[1]

In or about March 1986, Moneymaker filed three adversary proceedings in Golden's bankruptcy case against Golden and other beneficiaries, asserting an interest in certain properties and assets of the Golden estate. These three adversary proceedings, which are the subject of the instant appeal, are the cases dismissed by the bankruptcy court for failure to prosecute. Through these actions, Moneymaker sought to avoid or rescind certain real estate transactions that resulted in liens in favor of Golden on property in which the Eisen estate claimed an interest.

Moneymaker filed these actions in the Bankruptcy Court for the Central District of California. Upon CoBen's motion, the court transferred the venue to the Eastern District of California where Golden's bankruptcy was pending. The Eastern District received the files for Moneymaker's actions on December 15, 1986. Moneymaker filed a notice for leave to appeal the venue change, which the court denied on or about July 2, 1986. This is the only action Moneymaker took with the court until after CoBen filed his first motion to dismiss over four years later.

On August 31, 1990, CoBen filed a motion to dismiss one of Moneymaker's actions for failure to prosecute. CoBen alleged that Moneymaker had done nothing to prosecute that action for four years and that the pendency of the action prevented him from selling the property involved and from completing the Golden bankruptcy.

In opposition to the motion to dismiss, Moneymaker asserted that he had taken action to prosecute and that the parties were contemplating settlement, as evidenced by letters from April and June 1990. Further, Moneymaker alleged that CoBen had failed to prosecute his own adversary proceedings in Golden's bankruptcy, involving some of the same properties as the Moneymaker actions. Moneymaker also claimed that the cost of litigation in Sacramento, due to the change of venue, and the fact that his attorney retained the case on a contingency basis hindered prosecution. Finally, Moneymaker argued that the court should not dismiss since Co-Ben had failed to show actual prejudice and since the court had not warned Moneymaker of the possibility of dismissal.

On September 21, 1990, Moneymaker filed motions to set trial dates for all three of his actions. CoBen responded with oppositions and counter-motions to dismiss for failure to prosecute the two remaining Moneymaker actions. After a hearing on September 25, 1990, the bankruptcy court dismissed the first Moneymaker action, finding that the plaintiff's failure to act for four years was egregious and too long for the prosecution to remain dormant. At the hearing, the court did not discuss alternative sanctions to dismissal or other factors it might have considered in ordering dismissal; however, in the subsequent order of dismissal, the court asserted its reasons for dismissal and its belief that monetary or lesser sanctions would not compensate Golden. On October 23, 1990, the court dismissed the two remaining Moneymaker actions and denied Moneymaker's motions to set trial dates. The court gave the same reasons for dismissal.

Moneymaker filed motions for reconsideration of the orders of dismissal in all three actions. The court denied these motions, finding that a notice of intent to dismiss was not required before dismissing Moneymaker's actions and that with a four-year delay prejudice to the defendant could be presumed. Further, the court expressed concern that Golden's bankruptcy had been pending for almost nine years.

■ Moneymaker appealed to the Bankruptcy Appellate Panel ("BAP") which affirmed the orders granting dismissal of the actions. The BAP discussed the factors that we have established for reviewing dismissals for failure to prosecute and held that the bankruptcy court had not abused its discretion, since "[t]he four-year delay in the pros-

---

1. On February 16, 1990, the bankruptcy court sent CoBen a notice of intent that it would dismiss CoBen's adversary for failure to prosecute if the trial date was not set within 10 days. The court did not dismiss the actions. On June 8, 1990, CoBen made a motion to consolidate his adversary with one of Moneymaker's adversaries because both actions involved the same property. He later dismissed this motion on August 13, 1990.

ecution of [the Moneymaker actions] simply cannot be excused." Subsequently, Moneymaker and Eisen, the debtor, filed this appeal.[2]

## II. DISCUSSION

■ Under Rule 41(b), a defendant may move for dismissal of an action for failure of the plaintiff to prosecute. Fed.R.Civ.P. 41(b). We review a district court's dismissal of an action for lack of prosecution for an abuse of discretion. *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 650 (9th Cir.1991); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir.1988) (per curiam). We have stated that "[a] rule of thumb as to the meaning of the abuse of discretion standard provides that the trial court's exercise of discretion should not be disturbed unless there is 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1278 (9th Cir.1980) (quoting *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir.1976)).

■ We require the district court to weigh five factors to determine whether to dismiss a case for lack of prosecution: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir.1986) (citing *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir.1984), *cert. denied*, 470 U.S. 1007, 105 S.Ct. 1368, 84 L.Ed.2d 387 (1985)). Although beneficial to the reviewing court, a district court is not required to make specific findings on each of the essential factors. *Henderson*, 779 F.2d at 1424. If a district court does not make explicit findings, we "review the record independently to determine whether the court abused its discretion." *Id.; Ash*, 739 F.2d at 496.

In this case, the bankruptcy court discussed the factors in its order dismissing the actions. We will address each factor.

### A. Expeditious resolution of litigation

■ In dismissing a case for lack of prosecution, the court must find unreasonable delay. *Henderson*, 779 F.2d at 1423. A reviewing court will give deference to the district court to decide what is unreasonable "because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." *Id.* (citing *Ash*, 739 F.2d at 496).

In this matter, the bankruptcy court found that Moneymaker had taken no action to prosecute in four years and that this delay was "inherently unreasonable." According to the court, Moneymaker excused the delay based on insufficient funds to proceed with discovery and the fact that his attorney was on a contingency basis and thus was "unable or unwilling to advance the costs of such discovery." The court held that these excus-

---

**2.** Moneymaker claims that Eisen has standing to appeal as a "person aggrieved" because if Moneymaker can rescind the transactions involved in his adversary proceedings against Golden, then Eisen's estate will acquire surplus funds. *See Fondiller v. Robertson*, 707 F.2d 441, 442–43 (9th Cir.1983) (Under the "person aggrieved" test, "[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal."). However, even if Eisen is a "person aggrieved," Eisen, as a debtor, has no standing because Moneymaker, as trustee, is the representative of Eisen's estate.

Under section 323 of the Bankruptcy Code, a trustee is the representative of the debtor's estate and has the capacity to sue and be sued. 11 U.S.C. § 323 (1988). Once appointed a trustee, the debtor's assets and claims pass to the trustee,

making the trustee "the proper party in interest, and the only party with standing to appeal the bankruptcy court's order." *Hancock Bank v. Jefferson*, 73 B.R. 183, 185 (Bankr.S.D.Miss.1986) (citing *Skelton v. Clements*, 408 F.2d 353, 354 (9th Cir.1969) (trustee vested with causes of action and with bankrupt's personal property, so bankrupt is not a "person aggrieved" to ask for review of referee's Order)). Thus, as trustee, Moneymaker is vested with Eisen's causes of action, rendering Eisen with no standing to appeal.

It is unclear why Eisen is appealing the order, since the brief, submitted on behalf of both Moneymaker and Eisen, raises no additional arguments with respect to Eisen. Thus, even if Eisen did have standing, the outcome of this appeal would not change.

es did not explain why the actions were not brought to trial. Moneymaker "made no effort to provide a reasonable explanation for [the] delay; therefore, the delay is completely unexcused."

The four-year delay in this case is clearly unreasonable. In *In re Osinga,* 91 B.R. 893 (9th Cir. BAP 1988), the BAP found that a twenty-nine month delay was unreasonable and justified the bankruptcy court's *sua sponte* dismissal of a case because of the length of time, the importance in resolving bankruptcy matters, and the need to define the debtor's interests. In the instant matter, Moneymaker took no action for four years, which interfered with the expeditious resolution of bankruptcy matters and hindered the bankruptcy court's ability to manage its caseload. In addition, financial difficulties do not excuse a plaintiff's delay. *See Malone v. United States Postal Serv.,* 833 F.2d 128 (9th Cir.1987) (plaintiff's lack of financial means to comply with a court order did not excuse her unreasonable delay), *cert. denied,* 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).[3]

As the BAP concluded, Moneymaker presented "no competent evidence that the litigation would be 'expeditiously resolved' in the future." He brought motions to set trial dates two days before the hearing on CoBen's first motion to dismiss, clearly in response to the motion. His dilatory, last-minute conduct is evidenced in almost all of the few pleadings filed with the court, even those filed after he was on notice of CoBen's motion to dismiss. Moneymaker filed his responses to the motion to dismiss late and gave no adequate explanation for the late filing. In fact, Moneymaker's supplementary response to the motion to dismiss was struck from the record in its entirety because it was late filed. Anything Moneymaker did to move his actions to trial was after he was forced to do so, and he "cannot use his actions after the motion to dismiss was filed as evidence of his diligence in prosecuting the suit." *Fidelity Philadelphia Trust Co. v. Pioche Mines Consol., Inc.,* 587 F.2d 27, 29 (9th Cir.1978). Thus, based on the four-year period in this case in which Moneymaker took no affirmative action to prosecute his actions, the nature of bankruptcy proceedings, and Moneymaker's failure to provide an adequate excuse for delay, the bankruptcy court justifiably found unreasonable delay.

## B. The court's need to manage its docket

This factor is usually reviewed in conjunction with the public's interest in expeditious resolution of litigation to determine if there is unreasonable delay. A reviewing court also gives deference to the district court here since it knows when its docket may become unmanageable. *Henderson,* 779 F.2d at 1423.

In the instant matter, Golden's bankruptcy had been pending for nine years when the court dismissed Moneymaker's actions. On the basis of the unreasonable four-year delay and the bankruptcy court's desire to settle a nine-year-old bankruptcy estate, this factor weighs in favor of dismissal.

## C. The risk of prejudice to the defendants

When considering prejudice to the defendant,

> the failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure.... The law presumes injury from unreasonable delay. However, this presumption of prejudice is a rebuttable one and if there is

---

**3.** Moneymaker also alleges that he was lulled into a false sense of security because CoBen's adversary was pending at the same time and because CoBen filed a motion to consolidate and initiated settlement proceedings. These facts do not excuse Moneymaker's failure to take any affirmative action for over four years to prosecute his actions. The motion to consolidate and letters regarding settlement were in the last six months prior to dismissal and do not relieve Moneymaker of his responsibility, as plaintiff, to move his actions toward resolution. Moneymaker filed actions in Golden's bankruptcy and did nothing to further them, holding up the determination of Golden's estate. CoBen, as trustee for Golden, filed an action in Golden's bankruptcy to determine the interests of the estate; this is different from filing actions in a separate entity's bankruptcy and failing to move those actions toward resolution.

a showing that no actual prejudice occurred, that factor should be considered when determining whether the trial court exercised sound discretion.

*Anderson,* 542 F.2d at 524. This rebuttable presumption of prejudice refutes Moneymaker's unsupported contention that "delay alone, regardless of actual prejudice, does not necessitate a dismissal for failure to prosecute."

 We have summarized the burden of proof as to prejudice as follows:

[W]here a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At that point, the court must exercise its discretion by weighing the relevant factors—time, excuse, and prejudice.

*Nealey,* 662 F.2d at 1281. We consider prejudice and delay together to determine "whether there has been *sufficient* delay or prejudice to justify a dismissal of the plaintiff's case." *Id.* at 1280 (emphasis in original).

The *Nealey* court noted that "[p]rejudice itself usually takes two forms—loss of evidence and loss of memory by a witness.... [A] district court in the exercise of its discretion should consider whether such losses have occurred and if so, whether they are significant [since] [n]ot every loss, and particularly not every loss of memory, will prejudice the defense of a case." *Id.* at 1281. Whether the prejudice is significant will depend on "whether the plaintiff's actions impair the defendant's ability to go to trial or

threaten to interfere with the rightful decision of the case." *Malone,* 833 F.2d at 131.

Moneymaker alleges that CoBen was not prejudiced by any delay. First, Moneymaker asserts that CoBen abandoned his financial interest in the properties and thus cannot claim that he is prejudiced by actions against such properties. Second, Moneymaker claims that CoBen cannot base a showing of prejudice on prejudice suffered by other defendants in the Moneymaker actions. Finally, Moneymaker contends that the bankruptcy court should not have found actual prejudice because Moneymaker resumed diligent prosecution by filing motions to consolidate his actions and to set trial dates.

The bankruptcy court rejected the argument that CoBen had suffered no prejudice. The court found that "[t]he fact that after Defendant has brought its motion to dismiss, the Plaintiff begins some effort to prosecute, does not vitiate the delay itself." Taking action after defendant's motion to dismiss was pending did not excuse taking no action prior to defendant's motion for four years. The bankruptcy court rejected Moneymaker's reliance on cases in which the delay had been mild or the plaintiff had made some effort to prosecute. The court distinguished this case based on a lengthy four-year delay and plaintiff's failure to take any action to resolve the litigation.

Analyzing this case under the burden of proof standard discussed in *Nealey,* the bankruptcy court was within its discretion to find actual prejudice. Assuming that Moneymaker has produced evidence of an excuse for delay that is less than frivolous,[4] CoBen has shown actual prejudice. First, during the pendency of the Moneymaker actions, CoBen could not sell the property involved, preventing him from closing Golden's bankruptcy. Second, courts presume injury

---

4. We find Moneymaker's excuses for delay wholly unpersuasive. As previously stated, the fact that his attorney took his case on a contingency basis and therefore found it financially burdensome to process his case is a frivolous excuse. Furthermore, Moneymaker's excuse that CoBen was going to consolidate his own action and that settlement negotiations were underway only involves the last few months before the bankruptcy court dismissed the Moneymaker actions. More-

over, CoBen, not Moneymaker, filed the motions to consolidate and initiated settlement negotiations; Moneymaker took no affirmative action on his own to advance his own suits for over four years. However, because Moneymaker has alleged that CoBen abandoned interest in some of the subject properties and that CoBen's own adversary was also pending with little or no action, we will assume Moneymaker has provided an excuse for delay that is less than frivolous.

based on "the fact that witnesses move away and their memories fade," *Osinga*, 91 B.R. at 895, and in this case, one of the beneficiaries of the properties, who would have served as a witness, has passed away. Third, discussing the nature of a bankruptcy action, the BAP in *Osinga* noted that bankruptcy operates to give debtors immediate relief and that "appellants' two and one half years of inaction impaired or prejudiced the debtors' fresh start." *Id.* In this case, Moneymaker's four-year delay should not hinder CoBen's ability to manage and close the Golden estate. After this showing of prejudice, Moneymaker has not shown that the force of his excuse renders this prejudice "illusory or relatively insignificant." *Nealey*, 662 F.2d at 1281. Thus, under our review for an abuse of discretion, the bankruptcy court justifiably found actual prejudice based on the CoBen's inability to settle Golden's estate which had been pending for nine-years and Moneymaker's unreasonable four-year delay. *See Anderson*, 542 F.2d at 525 (District judge's findings that defendants suffered actual prejudice are entitled to considerable weight.).

### D. Disposition of cases on their merits

▮ Determining whether dismissal is warranted, courts weigh this factor against the plaintiff's delay and the prejudice suffered by the defendant. Moneymaker asserts that defendants acquired their interest in the involved properties through fraud, that CoBen is an interested party and thus should be disqualified as trustee, and that CoBen has unclean hands.[5] These contentions address the merits and the likelihood of success of Moneymaker's causes of action and not the importance of determining his cases on their merits.

In addition, we need not scrutinize the merits of a case when reviewing a dismissal. The *Anderson* court stated that:

> [w]hile the strength or weakness of the plaintiff's case may be a factor in determining the harshness of dismissal in a particular case, the court should not closely scrutinize the merits of an action when reviewing an order of dismissal. Even if the plaintiff has an obviously strong case, dismissal would be appropriate if the plaintiff has clearly ignored his responsibilities to the court in prosecuting the action and the defendant had suffered prejudice as a result thereof.

*Anderson*, 542 F.2d at 526. The *Anderson* court also noted that the plaintiff had not shown that she had such a strong case. Similarly, although Moneymaker asserts claims of fraud and conflict of interest, he does not demonstrate a strong showing that his actions are likely to be resolved in his favor. Further, Moneymaker does not specify why it is important that his actions be resolved on their merits, nor does he address the court's policy not to scrutinize the merits. "Although there is indeed a policy favoring disposition on the merits, it is the responsibility of the moving party to move towards that disposition at a reasonable pace, and to refrain from dilatory and evasive tactics." *Morris*, 942 F.2d at 652. Moneymaker certainly has not fulfilled his responsibility. Thus, the public policy favoring the resolution of disputes on their merits does not outweigh Moneymaker's four-year delay or the prejudice suffered by Golden's bankruptcy estate.

### E. The availability of less drastic sanctions

▮ We have "never held that explicit discussion of alternatives is *necessary* for an

---

5. On appeal, Moneymaker raises substantive issues of fraud, trustee disqualification due to an alleged conflict of interest, an improper change of venue, and misstatements of facts and erroneous conclusions of law. These issues are relevant to the extent that they relate to the bankruptcy court's dismissal of the Moneymaker actions. For example, Golden's alleged fraudulent conduct relates to whether this case should be decided on its merits and to the alleged strength of Moneymaker's actions. However, Moneymak-

er may not ask us to decide substantive issues raised on appeal. *See Jovanovich v. United States*, 813 F.2d 1035, 1037 (9th Cir.1987). The question on appeal is whether the bankruptcy court abused its discretion by ordering dismissal; the question is not whether Golden perpetrated a fraud or whether the court's change of venue was improper. Thus, we address these issues only to the extent they are relevant to the principle that Moneymaker's actions should be decided on their merits.

order of dismissal to be upheld." *Malone,* 833 F.2d at 132 (emphasis in original). As the BAP stated in *Osinga,* "[u]nder egregious circumstances, it is unnecessary (although helpful) for a trial court to discuss why alternatives to dismissal are infeasible." *Osinga,* 91 B.R. at 895.

Here, the bankruptcy court specifically found that less drastic sanctions would be inadequate, stating that:

> [m]onetary sanctions will not recompense [Golden's] bankruptcy estate for its continued inability to deal with an asset of its estate, nor will such sanctions bring back a witness' memory of incidents which occurred in 1980–1981, ten years prior to any trial date. For the same reason, lesser sanctions will not cure Plaintiff's delay; therefore, dismissal is the court's proper sanction.

This statement shows that the bankruptcy court in its dismissal order made a "reasonable exploration of possible and meaningful alternatives." *See Anderson,* 542 F.2d at 525 (citing *Von Poppenheim v. Portland Boxing and Wrestling Comm'n,* 442 F.2d 1047 (9th Cir.1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972)). We agree with the bankruptcy court that monetary sanctions in this case would not remedy Moneymaker's delay and would be ineffective considering Moneymaker's claim of financial hardship. Furthermore, any other alternative sanctions would not help close Golden's bankruptcy estate or remedy problems with loss of witnesses' memories.

Related to the possibility of less drastic sanctions, Moneymaker argues that the bankruptcy court abused its discretion by not issuing a warning to Moneymaker before dismissing the case. Moneymaker contends that when courts have not warned plaintiffs that dismissal is imminent if the action is not diligently brought to trial, they have suggested the imposition of a discovery and trial schedule, rather than dismissing the actions. We think Moneymaker's delay was egregious, and a discovery or trial schedule would not remedy the prejudice to Golden's bankruptcy estate.

Although we have reversed decisions of dismissal based on a court's failure to give a warning or to consider less drastic sanctions, such a reversal is not warranted in this case. We expressly rejected the argument that an express warning regarding the possibility of dismissal is a prerequisite to a Rule 41(b) dismissal when dismissal follows a noticed motion under Rule 41(b). *Morris,* 942 F.2d at 652. In *Morris,* the district court dismissed the action with prejudice because the plaintiffs "unnecessarily delayed the adjudication of the federal claims for almost two years" by failing to respond to correspondence and to appear at one or more scheduled meetings and misrepresenting their intentions to the court during five separate status conferences. *Id.* Although this case does not involve attempts by the court to move Moneymaker's actions to trial, Moneymaker's delay was egregious, and no warning was required because CoBen had filed a noticed motion to dismiss. Moneymaker could have remedied the situation by presenting to the bankruptcy court a reason for his conduct that outweighed the prejudice to Golden's bankruptcy estate. This Moneymaker failed to do.

This case is distinguishable from *Oliva v. Sullivan,* 958 F.2d 272 (9th Cir.1992), in which we reversed a dismissal because the court *sua sponte* dismissed a case without considering alternative sanctions or giving a warning. We noted that "[n]othing in the record demonstrates that counsel was on notice that the case would be dismissed" and that the facts were not so egregious as to "obviate the need for explicit discussion of alternatives." *Id.* at 274. Here, however, the bankruptcy court considered alternative sanctions and found them inadequate. Moreover, *Oliva* involved a *sua sponte* dismissal, and the court recognized that "[i]n cases involving *sua sponte* dismissal of an action, rather than dismissal following a noticed motion under Rule 41(b) [brought by the defendant] ..., there is a closer focus on the failure to consider less drastic alternatives and the lack of warning of imminent dismissal." In contrast, in this case, CoBen filed a motion to dismiss, and Moneymaker filed an opposition and participated in the hearing on dismissal, giving him an opportunity to remedy the matter by accounting for any delay and showing the court why his actions should be decided on their merits. The four-year

delay, Moneymaker's repeated late filings, and the prejudice to CoBen make this case so egregious that a court warning before dismissal was not necessary.

This case is also distinguishable from *Hamilton v. Neptune Orient Lines, Ltd.*, 811 F.2d 498 (9th Cir.1987), in which we reversed a district court's *sua sponte* dismissal of a case because it failed to warn the court prior to dismissal. We stated that "[t]he order dismissing the case indicate[d] that the district judge was primarily concerned with the time the case had been on the docket and the inconvenience of rescheduling his calendar." *Id.* at 500. We recognized that "[w]hile these are legitimate concerns, they do not relieve the district judge of his obligation to warn the plaintiff that dismissal is imminent." *Id.*

In this case, the bankruptcy court's order shows that it was primarily concerned with the egregious status of the case, the prejudice to Golden's bankruptcy estate and Moneymaker's failure to provide an adequate excuse for delay. In addition, *Hamilton*, a *sua sponte* dismissal case, was decided before *Morris*, which specifically rejects a warning requirement in a case involving a noticed motion to dismiss. *Morris*, 942 F.2d at 652. Finally, the court in *Hamilton* failed to consider alternative sanctions, *see Hamilton*, 811 F.2d at 500, which the bankruptcy court explicitly did in this case. Because of the egregious facts and the fact that this case involved a noticed motion to dismiss, rather than a *sua sponte* dismissal, Moneymaker's contention that the court should have given him some indication of dismissal is without merit.

### III. CONCLUSION

Based on consideration of the *Henderson* factors, the bankruptcy court did not abuse its discretion by granting CoBen's motion to dismiss for failure to prosecute.

**AFFIRMED.**