NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAMISI JERMAINE CALLOWAY, Plaintiff - Appellant, v. HAYWARD, C/O and OAKS, C/O, Defendants - Appellees. | No. 14-15659 D.C. No. 1:08-cv-01896-LJO-GSA MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted April 13, 2016
San Francisco, California

Before: O'SCANNLAIN, CLIFTON, and N.R. SMITH, Circuit Judges.

Plaintiff Jamisi Jermaine Calloway appeals the district court's *sua sponte*

dismissal of his case based on his representations at a trial confirmation hearing

that he was unable to proceed to trial. Calloway also argues that the district court

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

abused its discretion in denying his motion for appointment of counsel. We vacate in part, affirm in part, and remand for further proceedings.

The district court abused its discretion in *sua sponte* dismissing Calloway's case. Calloway's representations that he could not try his case without counsel did not, in themselves, cause unreasonable delay. *See Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984) ("Only 'unreasonable' delay will support a dismissal for lack of prosecution."). The sole basis the district judge provided for dismissing Calloway's action was Calloway's "multiple representations at the March 21, 2014 hearing that he is incapable and unable to proceed to trial." Calloway had not failed to participate, failed to respond, or failed to appear at the point his case was dismissed. The district court interpreted Calloway's statements as a refusal to proceed to trial, but his representations cannot properly be understood as a declaration that he would not proceed to trial and wanted the case dismissed if he was not provided with a lawyer. His statements were consistent with his numerous prior requests for the appointment of counsel.

Even assuming that the district court had foundation to consider dismissal of Calloway's case, the five-factor balancing test does not support dismissal. *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). Under that test, a district court must weigh the following factors to determine whether dismissal is

2

warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Id*. Dismissal may be affirmed when at least four factors favor dismissal or at least three factors strongly favor dismissal. *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

The first factor – the public's interest in expeditious resolution of litigation – "always favors dismissal." *Pagtalunan*, 291 F.3d at 642 (quoting *Yourish*, 191 F.3d at 990). The second factor – the court's need to manage its docket – is "usually reviewed in conjunction with the public's interest in expeditious resolution of litigation." *In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994). Given that a reviewing court generally defers to the district court's judgment regarding its need to manage its docket, this factor weighs in favor of dismissal. *Id.*

The third factor – the risk of prejudice to Defendants – does not support dismissal. A defendant is prejudiced "if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Defendants' ability to go to trial would have been affected had Calloway failed to appear at trial, *see, e.g.*, *Al-Torki v. Kaempen*, 78 F.3d 1381, 1385 (9th Cir. 1996),

3

but at the point Calloway's case was dismissed, that had not occurred. Calloway's representations that he was unable to proceed to trial on his own, likely made in an effort to obtain appointed counsel, had no effect on Defendants' rights or the decision of the case. Defendants contend that there was a risk of prejudice to them as a result of "the substantial passage of time" and the "risk of fading memories and stale evidence," but Defendants base this solely on the continuing pendency of the case up to that point in time. That might have provided reason to oppose any further continuance, but it did not constitute prejudice sufficient to support dismissal. *See Ash*, 739 F.2d at 496 ("[Defendant] argues that the mere pendency of a law suit is prejudicial. While it may be prejudicial, it cannot, by itself, be considered prejudicial enough to warrant dismissal. Otherwise a delay of even one day would be justifiable grounds for dismissal for lack of prosecution.").

The fourth factor – the availability of less drastic alternatives – also does not support dismissal. Although a warning that dismissal will result from disobeying a court order can constitute adequate consideration of alternatives, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), the district court did not make such a warning here. Instead, the district court dismissed Calloway's case immediately after telling him that it had "no alternative" but to dismiss. The district court stuck to that position even after Calloway insisted that he was ready and willing to

4

proceed to trial. This would be a different case if the district court had warned Calloway at the trial confirmation hearing that failure to appear at trial would result in dismissal, and then dismissed the case after Calloway failed to appear or failed to satisfy other deadlines leading up to trial, but that is not what occurred. Alternatives less drastic than immediate dismissal were available.

The last factor – the public policy favoring disposition of cases on their merits – inherently weighs against dismissal. *See Pagtalunan*, 291 F.3d at 643.

With only two out of the five factors favoring dismissal of Calloway's case, the district court's decision cannot be affirmed, even assuming a factual predicate for dismissal existed. *See Yourish*, 191 F.3d at 990. We vacate the district court's dismissal of Calloway's case and remand for further proceedings.

Calloway next argues that the district court erred in denying his motion for appointment of counsel. That argument lacks merit because the record does not reflect Calloway having a pending motion for appointment of counsel. Even if Calloway's statements at the trial confirmation hearing could be treated as a renewed motion for appointment of counsel, the district court did not abuse its discretion in denying that motion. Calloway did not demonstrate that exceptional circumstances warranted the appointment of counsel. *See* 28 U.S.C. § 1915(e)(1); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).

5

If Calloway instead objects to the denial of his motion for a continuance, he must at least show that prejudice resulted from the denial. *Armant v.Marquez*, 772 F.2d 552, 556-57 (9th Cir. 1985). He has not done so. Calloway had not obtained counsel during the substantial time his case was pending and he appears to have been no closer to obtaining counsel at the time his motion was denied. The court had ample basis for declining to further extend a case that had already been pending for years.

The district court's denial of Calloway's motion, whether a motion for appointment of counsel or a motion for a continuance, is affirmed.

Each party to bear its own costs.

**VACATED AND REMANDED IN PART AND AFFIRMED IN PART.**

FILED

JUN 06 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Were I deciding this case on my own, I would have found that Calloway's sole argument on appeal pertained to his alleged motion for appointment of counsel. However, neither of my colleagues agree with me. Thus, I must address whether the district court properly dismissed Calloway's case for failure to prosecute. On that issue, the law compels us to decide the case as the majority has done.

I.

Before I describe my analysis in concurring, I must explain my view that this appeal is *not* about a dismissal for failure to prosecute. Calloway presents two issues on appeal, both of which stem from a motion for appointment of counsel that Calloway alleges he made. First, Calloway asserts that the district court failed to properly analyze his motion. Second, Calloway asserts that the district court abused its discretion by dismissing his case in response to the motion. However, to find for Calloway, we would necessarily have to find that he made such motion at, or in anticipation of, the trial confirmation hearing. The record does not support that assertion. Rather, Calloway appeared before the court with a motion for a continuance, which the court denied. Although Calloway had previously made motions for appointment of counsel, those motions had all been denied in prior

proceedings, and Calloway does not appeal from those denials.

On appeal, Calloway did not raise any claims regarding the district court's denial of his motion to continue, thus those claims are waived. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam) (quoting *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL–CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985)). Further, such claims could not be raised on appeal, because the order denying Calloway's motion to continue was an interlocutory order followed by a dismissal for failure to prosecute. *See Al-Torki v. Kaempen*, 78 F.3d 1381, 1386 (9th Cir. 1996) ("[I]nterlocutory orders, generally appealable after final judgment, are not appealable after a dismissal for failure to prosecute . . . .").

The majority and dissent concentrate on whether the district court erred in dismissing Calloway's case for failure to prosecute. However, Calloway never raised that argument to us. Instead, Calloway contends that the district court treated his assertions that he was unable to represent himself in trial "as a concession that his case should be dismissed if the motion were denied." Calloway argued fervently that the district court did *not* dismiss his case for failure to prosecute. Only as an "even if" argument in his Reply Brief did Calloway assert that *if* the district court dismissed his case for failure to prosecute, doing so was an abuse of

2

discretion. Thus, I would not have decided whether the district court properly dismissed the case for failure to prosecute.

## II.

The dissent argues that the majority is "unwilling to recognize the generous leeway" required under the abuse of discretion standard. Dissent 1. I agree that the abuse of discretion standard is highly deferential, and that district courts have a right to manage their own dockets. However, the dissent misses an important point: the district court never stated the legal standard under which it was dismissing the case.

"[T]he first step of our abuse of discretion test is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Under the second step, we must "determine whether the trial court's application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *Id.* (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 577 (1985)). If the district court erred at either step, we must find an abuse of discretion. *Id.*

The dissent jumps immediately to step two and analyzes the application of facts to the *Ferdik* factors. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th

3

Cir. 1992). However, the district court's error was at step one, because the district court never "identified the correct legal rule" for dismissing the case. *Hinkson*, 585 F.3d at 1262. The district court concluded simply that, "[b]ased on [Calloway's] multiple representations at the [trial confirmation] hearing that he is incapable and unable to proceed to trial in this matter, the court made a *sua sponte* motion to dismiss this case and granted the motion." What legal standard the district court proceeded under in dismissing the case is subject to speculation. Therefore, I would find an abuse of discretion at step one.

Further, whether we take the majority's broad reading of the facts or the dissent's narrow reading, I can find no precedent that would support *sua sponte* dismissal for failure to prosecute under these circumstances. Rather, this court has readily reversed dismissals of cases in which a party was willing to try his case. This is particularly true where the party is a pro se litigant, incarcerated, and filing claims under 42 U.S.C. § 1983. *See Hernandez v. Whiting*, 881 F.2d 768, 771 (9th Cir. 1989) ("[A] trial court may not lightly dismiss an incarcerated individual's suit for failure to prosecute."). Calloway meets all three criteria. The dissent cites several cases in which we upheld dismissal of a case for failure to prosecute. However, each of those cases present entirely different facts. Importantly, most involve a party who failed to appear at trial. Sadly, Calloway was not given that

opportunity. Again, I can find no case that would permit dismissal under the facts in this case.

*Calloway v. Hayward*, No. 14-15659

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part

My colleagues would not have dismissed Calloway's lawsuit had either of them been the judge presiding over it. Nor would I have done so—perhaps. But my colleagues are wrong to vacate the district court's dismissal order simply because we might have behaved differently. Indeed, this case is about how much discretion our district courts have to manage their dockets and to deal with uncooperative litigants. And those are topics of large importance. Yet my colleagues are unwilling to recognize the generous leeway we have always given district courts to make the difficult decisions that enable the orderly administration of justice. With regret, I cannot join such a disposition.

I

The Supreme Court long ago recognized that district courts have "inherent power" to dismiss a plaintiff's action as a sanction if he fails to prosecute his case, and that such power is one "of ancient origin" that is "necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962). We review such dismissals "for an abuse of discretion," *McKeever v. Block*, 932 F.2d 795, 797 (9th Cir. 1991), and we may not overturn one unless "we

have a definite and firm conviction that it was clearly outside the acceptable range of sanctions," *Allen v. Bayer Corp. (In re PPA)*, 460 F.3d 1217, 1226 (9th Cir. 2006) (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)).

In this case, I agree with the majority that the district court was within its discretion to deny Calloway's request for a continuance. The question then becomes whether the district court also had discretion to dismiss Calloway's case in light of his subsequent, repeated declarations that he could not and would not proceed to trial. I believe the district court did have such discretion.

A

To decide whether a district court acted within the bounds of its discretion, courts in our circuit typically apply a five-factor balancing test. We consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).[1]

---

[1] Judge N.R. Smith would reverse the district court because it failed to identify the five factors that govern dismissals for failure to prosecute. But we have already held that a district court's failure to identify such factors is not reversible error. *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984) ("The district

(continued...)

2

## i

The first factor is easily met by the court's action, as Calloway and the majority both concede.

## ii

Likewise for the second factor, as again Calloway and the majority both concede.

## iii

The third factor presents a closer call. It asks to what extent the plaintiff's conduct risked prejudicing the other side's ability to mount a defense.

Fleshing out this factor, we have held that prejudice to the defendants is inextricably bound up with delay caused by the plaintiff. *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984); *Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1280 (9th Cir. 1980). And, crucially, it is well understood that district courts have discretion to consider the aggregate delay caused by a plaintiff over the course of the entire litigation; the district court need not restrict its analysis to the

[1](...continued)
court gave no indication, either orally or in writing, that it considered the essential factors [governing dismissal for failure to prosecute]. No findings of fact or conclusions of law were prepared. Such findings, although they would obviously be very helpful on review, are not required. When confronted with this situation we review the record independently in determining whether the district court abused its discretion." (internal citations omitted)).

event immediately preceding the dismissal order. *See, e.g.*, *Link*, 370 U.S. at 633 ("[I]t could reasonably be inferred from his absence, *as well as from the drawn-out history of the litigation*, that petitioner had been deliberately proceeding in dilatory fashion." (emphasis added)); *Franklin v. Murphy*, 745 F.2d 1221, 1234 (9th Cir. 1984) (explaining that "[t]he relevant time period in determining failure to prosecute . . . is the period of delay caused by the plaintiff"). And "the period of delay" need not be "particularly lengthy" to justify the district court's exercise of discretion in dismissing for failure to prosecute. *Ash*, 739 F.2d at 496; *see also Moffitt v. Ill. State Bd. of Educ.*, 236 F.3d 868, 873 (7th Cir. 2001) (affirming dismissal despite "agree[ing] with [plaintiff] that there is no real record of delay or contumacious behavior on her part in this case").

In this case, Calloway caused significant delay during the five-plus years between the day he filed his complaint in 2008 and the day the district court dismissed it in 2014. After filing this lawsuit, he waited nearly two and half years before serving the defendants, and in the following years he requested at least eight extensions of time for a variety of reasons, on top of numerous failed attempts to conduct discovery and botched responses to court orders. In light of our precedents, it was not an abuse of discretion for the district court to conclude that Calloway had caused meaningful delay and hence a risk of prejudice to Hayward

4

and Oaks.

iv

The fourth factor instructs the district court to consider the availability of less drastic alternatives. The district court did so, in compliance with our precedents, because the court repeatedly warned Calloway that he faced the possibility of dismissal before the court actually ordered it. *In re PPA*, 460 F.3d at 1229 (stating district court satisfies the fourth factor when it "warn[s] the plaintiff of the possibility of dismissal before actually ordering dismissal").

v

Finally, the fifth factor—the public policy favoring disposition of suits on their merits—favors Calloway, but I consider its weight to be somewhat diminished given that Calloway's own deliberate conduct triggered the district court's decision to dismiss his case.

B

The five traditional factors give the district court's dismissal order enough support to withstand scrutiny on appeal. And such conclusion is reinforced by the fact that the decision under review is largely consistent with precedent from our own court and elsewhere. As a leading treatise summarizes, there are many cases illustrating that "[a]n action may be dismissed . . . if the plaintiff, without offering

some explanation that is satisfactory to the court, is not ready to present his or her case at trial or if the plaintiff refuses to proceed at the trial."  9 Charles Alan Wright et al., *Fed. Prac. & Proc.* § 2370 (3d ed. 2013).  For example, in *Kung v. FOM Investment Corp.*, 563 F.2d 1316, 1318 (9th Cir. 1977), we affirmed a dismissal for failure to prosecute where the plaintiff "flagrantly ignored" the district court's warning "that dismissal would result if [the plaintiff] was not ready for the pre-trial conference at the end of the last continuance."  *See also Moffitt*, 236 F.3d 873 (affirming dismissal based merely on "the plaintiff's unwillingness to proceed on the date scheduled for trial, as opposed to the more typical failure to comply with her discovery obligations on time, or to meet some other pre-trial deadline"); *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993) (explaining that cases are typically dismissed for failure to prosecute "when the plaintiff is not ready for trial or fails to appear").  Notably, *Moffitt* was not "a case in which sanctions less severe than dismissal had already proven ineffective as a means of preventing further noncompliance with the court's orders," nor had the court in that case "expressly warned Moffitt that it would dismiss the case for want of prosecution if she was not prepared to go forward on the scheduled trial date." *Moffitt*, 236 F.3d at 873.

In the present case, the district court made clear to Calloway that it would

6

not grant him any more continuances, and warned him several times that it would dismiss his case if he continued to disavow any intention of proceeding to trial. Yet that is what he did. The district court did not abuse its discretion by following through on its warning. And while it is true that at the end of their colloquy Calloway tried to backtrack by claiming he *did* intend to go to trial after all, his overall course of conduct so undermined his credibility that the district court was within its discretion to enter the dismissal order.

## II

The majority sees things differently. I respectfully suggest that my colleagues take an unduly cramped view of the district court's authority to sanction litigants like Calloway, and they arrive at such view only because they have overlooked several of the important lessons our precedents illustrate.

First, the majority insists that Calloway's "representations" at the March 21, 2014 hearing "did not cause an unreasonable delay in proceedings." That may be true, but as explained above, district courts are free to consider the aggregate delay a plaintiff has caused during the entire course of the litigation. My colleagues are wrong to fasten blinders on the district court; its field of vision need not be restricted to Calloway's behavior at the hearing that spurred his suit's dismissal.

My colleagues repeat the same error when they attempt to explain why

7

Calloway's conduct posed no risk of prejudice to Hayward and Oaks. Again the majority trains its attention on Calloway's behavior on the specific date his case was dismissed, thereby excluding from view the considerable delay Calloway had caused during the nearly six years leading up to the pretrial hearing in March of 2014. As I have explained, such myopia is at odds with our precedents (and with common sense). Likewise, the majority is wrong to pooh-pooh the defendants' fear of prejudice, which, the majority claims, is "base[d] . . . solely on the continuing pendency of the case up to that point in time." What my colleagues seem to forget is that Calloway's dilatory tactics were much of the reason *why* the case had been pending for so long up to that point.

Finally, my colleagues simply misread the record when they say that the district court never gave Calloway any warning before dismissing his case. To the contrary, several times the district court warned Calloway (over his repeated interruptions) that if he persisted in his unwillingness to proceed to trial, his case would be dismissed. The district court did enough, under our precedents, to demonstrate that it considered alternatives.

### III

I cannot say with confidence that I would have dismissed Calloway's suit if I were presiding, nor can I say that the district court abused its discretion in doing

8

so. I regret that my colleagues have given short shrift to the district court's elemental, and quite essential, power to control its own docket in the face of uncooperative litigants. Such power is vital to the system's ability to deliver justice in a timely and careful manner—not only to Calloway, Hayward, and Oaks—but also to all those parties whose disputes were not before the court on the day of Calloway's pretrial hearing.

I therefore respectfully dissent from the majority's decision to vacate the district court's dismissal order.