FILED

JUL 07 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   EC-15-1111-TaJuD |
| LARRY TEVIS and NANCY TEVIS, | Bk. No.   2:04-bk-26357 |
| Debtors. | Adv. No.  2:08-ap-2004 |
| LARRY TEVIS; NANCY TEVIS, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS; JAN P. JOHNSON, Chapter 13 Trustee, | |
| Appellees.[**] | |

Submitted Without Oral Argument[***]
on June 23, 2016

Filed – July 7, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher D. Jaime, Bankruptcy Judge, Presiding

Appearances:   Larry Tevis and Nancy Tevis, pro se, on brief;
Todd D. Irby and Vasilios Stylianos Spyridakis on

---

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**]   Appellee Jan P. Johnson did not file a brief; pursuant to the BAP Clerk of Court's conditional order of waiver, he waived the right to appear in this appeal.

[***]   The Panel unanimously determined that the appeal was suitable for submission on the briefs and record pursuant to Rule 8019(b)(3).

brief for appellee California Department of Veterans Affairs.

Before:   TAYLOR, JURY, and DUNN, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtors Larry Tevis and Nancy Tevis appeal from an order dismissing their adversary proceeding against the California Department of Veterans Affairs and the chapter 13 trustee for failure to prosecute.

We AFFIRM the bankruptcy court.

## FACTS[2]

Prepetition, the Tevises contracted with the California Department of Veterans Affairs ("CalVet").  The Tevises needed money to acquire a mobile home, and CalVet provided the funding. CalVet, however, did not provide a typical real or personal property secured loan.  Instead of taking a lien on the mobile home or the underlying real property (the "Property"), located in Rescue, California, CalVet obtained legal title to the Property as a form of security.  The Tevises would acquire (or reacquire) title when they paid CalVet in full.

Unfortunately, the Tevises were dissatisfied with the

---

[1]   Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]   We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and in the underlying bankruptcy case.  See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

2

mobile home; they claimed that it was damaged and initiated state court litigation against the vendor and others. Litigation between the Tevises and their state court counsel followed. And a payment default under the CalVet contract was not far behind. CalVet cancelled the contract after default and commenced an unlawful detainer action against the Tevises.

The parties quickly reached a settlement; CalVet agreed to reinstate the contract if the Tevises met certain conditions, including a payment due in July 2004. The Tevises, however, failed to pay as required by the settlement and, instead, filed a chapter 7 petition on June 21, 2004.

The chapter 7 trustee reached a compromise with CalVet allowing sale of the Property. This was unacceptable to the Tevises, so they converted to chapter 13 in December of 2004. Their amended confirmed chapter 13 plan provided for payment to CalVet and included a balloon payment in the amount of $13,100 in the 36th and final month of the amended plan - January 2008. The plan stated that the source of the balloon payment was a refinance or sale of the Property. Once again, however, the Tevises defaulted. As a result, the chapter 13 trustee moved to dismiss the case.

On January 2, 2008, more than 36 months into the chapter 13 case, the Tevises commenced an adversary proceeding against CalVet, the Trustee, the chapter 7 trustee, and others. The complaint asserted 18 claims for relief including fraud, negligence, breach of contract, defamation, and a request for injunctive relief. Soon after, the bankruptcy court granted in part the request for a preliminary injunction and entered an

3

order enjoining CalVet from "taking action to take possession" of the Property, including removing the Tevises from the Property, pending resolution of the adversary proceeding or further bankruptcy court order. The preliminary injunction also enjoined the Trustee from "taking action to dismiss the chapter 13 case." When the Tevises filed a third amended complaint in 2009 without leave from the bankruptcy court, several defendants, other than CalVet and the Trustee, successfully moved for dismissal. The Tevises unsuccessfully appealed these dismissals, but the adversary proceeding otherwise was inactive until its reassignment to a new bankruptcy judge approximately five years later.

The new bankruptcy judge promptly issued a scheduling order, which invited the parties to file status conference statements. The Tevises responded with a one paragraph statement opening with their statement of opposition to "the adversary proceedings in the bankruptcy court" and concluding with the assertion that the bankruptcy court was biased, had no integrity, and treated them unfairly. Their allegations were short on particulars; they merely pointed out that the bankruptcy court had denied their motion for relief under Civil Rule 60(b), based upon fraud on the court, and that an appeal of this ruling was pending before the Ninth Circuit.

Only CalVet and the Trustee appeared at the status conference. The bankruptcy court stated that it would issue an order that the Tevises show cause as to why the case should not be dismissed for failure to prosecute. In the OSC that followed, the bankruptcy court directed the Tevises to explain

4

in writing why the case should not be dismissed. The Tevises responded and asserted that prior to the status conference, they had called the courtroom deputy and advised that they would not attend due to illness. They also continued to assert that a fraud was perpetrated on the bankruptcy court and accused the bankruptcy court of colluding with those perpetrating the fraud.

The Tevises did not appear at the hearing on the OSC. The bankruptcy court stated that since the adversary proceeding was filed in 2008, there had been "little, if any, movement or progress toward the resolution and virtually no prosecution of this case other than the previously mentioned appeals." It noted that, as far as it could tell, there had been no discovery and that the chapter 13 case was also stagnant. It stated that the Tevises had not made plan payments in several years; in fact, CalVet had not received a payment since February 2008. The bankruptcy court then analyzed the five factors necessary to dismiss the case based on a failure to prosecute under Civil Rule 41(b), as incorporated into adversary proceedings by Rule 7041, and dismissed the case. Finally, it dissolved the injunctions against CalVet and the Trustee issued seven years before.

The bankruptcy court entered an order dismissing the adversary proceeding, and the Tevises appealed.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

///

**ISSUES**

Whether the bankruptcy court abused its discretion in dismissing the adversary proceeding based on a failure to prosecute or erred by dissolving the injunctions.

**STANDARD OF REVIEW**

The bankruptcy court's dismissal of an adversary proceeding based upon a plaintiff's failure to prosecute is reviewed for an abuse of discretion. Al-Torki v. Kaempen, 78 F.3d 1381, 1384 (9th Cir. 1996).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

**DISCUSSION**

In determining whether to dismiss an adversary proceeding for failure to prosecute, the bankruptcy court must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the bankruptcy court's need to manage its docket; (3) the risk of prejudice to defendants; (4) the public policy favoring disposition of cases on their merits;  and (5) the availability of less drastic sanctions. Moneymaker v. CoBen (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994).  The bankruptcy court, however, "is not required to make specific findings on each of the essential factors." See id.

**Expeditious resolution of litigation**.  In weighing this factor, "the court must find unreasonable delay." In re Eisen,

31 F.3d at 1451. We give deference to the bankruptcy court's determination of "what is unreasonable because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." Id. (internal quotation marks and citation omitted).

Here, the bankruptcy court found that the first factor weighed in favor of dismissal and implicitly found an unreasonable delay. In doing so, it did not clearly err.

The Tevises filed the adversary proceeding in January 2008; seven years passed before the bankruptcy court dismissed the case. The record reflects little to no activity during those seven years, other than motions to dismiss filed by various defendants and the Tevises' appeals from the orders granting those motions. There is no indication that the parties ever engaged in discovery, filed any status reports, or did much of anything prior to the bankruptcy court's issuance of the OSC. On this record, the delay was plainly unreasonable.

**The bankruptcy court's need to manage its docket**. The bankruptcy court typically reviews this factor in conjunction with the first; again, we give deference to the bankruptcy court's decision as to its docket management. See In re Eisen, 31 F.3d at 1452.

The bankruptcy court determined that the second factor weighed in favor of dismissal because the Tevises affirmatively refused to prosecute the case. It found that based on their failure to attend the status conference scheduled after the judicial reassignment, the bankruptcy court was hindered in its ability to set pretrial deadlines or to "determine discovery"

7

and that it had expended resources on the case which could have been better spent in other matters. Again, its finding was not clearly erroneous.

The bankruptcy court on its own volition scheduled a status conference in January 2015 and ordered that the parties file statements. The Tevises filed an unproductive, one-paragraph statement; they alleged that the bankruptcy court had treated them unfairly, was biased, and lacked integrity. The Tevises did not appear at the OSC hearing and filed a response to the OSC that alleged that the bankruptcy court was colluding with CalVet and the Trustee. Given this unhelpful response to the new judge's attempt to manage the litigation properly and the fact that the adversary proceeding was pending for seven years with little to no activity, the record clearly supports the bankruptcy court's finding.

**Risk of prejudice to the defendants**. There is a rebuttable presumption of prejudice to the defendant, "even in the absence of a showing of actual prejudice," based on the plaintiff's per se failure to prosecute diligently. In re Eisen, 31 F.3d at 1452 ("The law presumes injury from unreasonable delay.") (citation omitted). Only if the plaintiff shows that the delay was not frivolous, that is, excusable, must the defendant show actual prejudice. Id. at 1453.

Here, the bankruptcy court found that the third factor weighed in favor of dismissal. Given its finding of unreasonable delay, prejudice was properly assumed. In addition, the bankruptcy court noted that the Tevises' failure to prosecute the adversary proceeding had prevented Cal Vet and

8

the Trustee from engaging in discovery, which, in turn, hampered their ability to meaningfully defend the case. It found that "over time memories fade, evidence disappears, evidence that may perhaps have been once available is no longer available," making it unreasonably difficult for Cal Vet and the Trustee to mount a meaningful defense. Finally, the bankruptcy court stated that it considered it prejudicial to CalVet and the Trustee to forcibly remain as parties in a case that was seven years old. Again, its findings were not clearly erroneous.

The seven years in which the adversary proceeding was open but inactive facially evidence delay. The Tevises have failed to show that the delay was excusable. And while the adversary proceeding and chapter 13 case languished, the injunctions continued. Apparently, the Tevises have not made a payment on the CalVet contract since 2008. At the time of the OSC hearing, they had lived on the Property for free for roughly seven years. Similarly, the Trustee remained as the panel trustee in a chapter 13 that was well past its statutory expiration date, and he could not seek case dismissal. The actual prejudice to the appellees here was substantial.

**The policy favoring disposition of cases on their merits**. The bankruptcy court "weigh[s] this factor against the plaintiff's delay and the prejudice suffered by the defendant." In re Eisen, 31 F.3d at 1454. The Panel, however, "need not scrutinize the merits of a case when reviewing a dismissal." Id. ("Even if the plaintiff has an obviously strong case, dismissal would be appropriate if the plaintiff has clearly ignored his responsibilities to the court in prosecuting the

9

action and the defendant had suffered prejudice as a result thereof.") (citation omitted).

Here, the bankruptcy court found that the fourth factor initially weighed against dismissal because of the public policy in favor of disposing a case on the merits. That said, however, it ultimately found that this factor could not militate against dismissal. Once again, it did not clearly err. Even if the Tevises had a meritorious case at one point - something we do not determine - the length of time that this adversary proceeding has been pending required that the public policy factor be accorded little weight.

**Availability of less drastic sanctions**. Although the bankruptcy court is not required to discuss alternatives expressly where egregious circumstances exist, it generally should conduct "a reasonable exploration of possible and meaningful alternatives." In re Eisen, 31 F.3d at 1455 (internal quotation marks and citation omitted).

The bankruptcy court found that the fifth factor was the most important and also weighed in favor of dismissal. It found that the Tevises had made it "abundantly clear" that they did not intend to prosecute the case and that there was nothing it could do to persuade them to move forward with the case. It did not clearly err in making this determination.

The bankruptcy court dismissed the case after issuing the OSC. The Tevises filed an unhelpful response to the OSC and then did not appear at the OSC hearing. Even the risk of case dismissal did not incentivize them to meaningfully participate in the proceeding. On this record, we cannot say that the

10

bankruptcy court clearly erred in finding that less drastic sanctions were unavailable or not viable.

Based on the foregoing, the bankruptcy court did not abuse its discretion in dismissing the case under Civil Rule 41(b) based on failure to prosecute. Given that case dismissal was appropriate, the injunctions against CalVet and the Trustee were no longer warranted and there was no error in dissolving them.

**CONCLUSION**

We AFFIRM.

11