NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP Nos.   CC-16-1085-PaKiF |
| ) | CC-16-1129-PaKiF |
| SARKIS ANTABIAN, ) | (Related) |
| ) | |
| Debtor. ) | Bk. No.   2:15-bk-11479-ER |
| ————————————————————— ) | |
| ) | Adv. No.   2:15-ap-01339-ER |
| SARKIS ANTABIAN, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Appellee. ) | |
| ————————————————————— ) | |

Argued  on November 17, 2016
at Pasadena, California
Submitted on December 9, 2016

Filed - December 21, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

Appearances:    Jayne Kaplan argued for appellant; J. Alexandra
Rhim of Hemar, Rousso & Heald, LLP argued for
appellee.

Before: PAPPAS,[**] KIRSCHER, and FARIS, Bankruptcy Judges.

---

     [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

     [**] The Honorable Jim D. Pappas, United States Bankruptcy
Judge for the District of Idaho, sitting by designation.

Appellant Sarkis Antabian, a chapter 11[1] debtor ("Debtor"), separately appeals two bankruptcy court orders relating to the dismissal of his adversary proceeding against appellee Wells Fargo Bank, N.A. ("Wells Fargo"). The related appeals were ordered jointly briefed. We conclude that the appeals are not moot and AFFIRM.

## I. FACTS

### A. The Bankruptcy Case

Debtor is the sole shareholder of Aviation Tire and Service Corporation ("ATS"), which conducted business at 3410 Aviation Boulevard in Redondo Beach, California ("the Property"). In 2007, Debtor personally borrowed approximately $1.3 million from Wells Fargo ("the Loan"). The Loan was secured by a deed of trust that encumbered the Property. By early 2013, Debtor had ceased making payments on the Loan.

In September 2014, Wells Fargo recorded a notice of default. Then, in January 2015, it recorded a notice of sale of the Property and scheduled a trustee's sale for February 4, 2015. However, three days prior to the sale, Debtor, with the assistance of his counsel Jayne Kaplan ("Counsel"), filed a chapter 11 petition, thereby preventing the sale from occurring.

Debtor intended to propose a liquidation of his assets in his chapter 11 plan. Prior to filing for bankruptcy, Debtor had

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1-86.

-2-

attempted to sell the Property, but had received no offers despite gradually reducing the price from $2.2 million to $1.4 million. By the time Debtor commenced his chapter 11 case, he owed Wells Fargo approximately $1.5 million on the Loan, an amount that continued to increase. Moreover, the Los Angeles County Tax Collector filed a proof of claim in the bankruptcy case for unpaid taxes on the Property for approximately $50,000.

**B.    Counsel's Health Problems**

When Counsel filed Debtor's chapter 11 petition in February of 2015, she was experiencing medical problems. Almost a year prior to the filing, in March 2014, she was rushed to the hospital for a life-saving surgery, after which she was hospitalized for a number of weeks. In December 2014, she was again hospitalized for a similar surgery. Counsel would later represent that, following the second surgery, she was "trying through the whole of 2015, to determine if [she] had Crohn's disease" and underwent either two or three invasive diagnostic tests that year. In May 2015, Counsel was referred to a specialized clinic, but she explained that "it took a long time to get appointments."

**C.    The Adversary Proceeding**

About four months into the bankruptcy case, on June 8, 2015, Wells Fargo filed a motion for relief from the automatic stay so that it could foreclose and sell the Property. Debtor opposed the motion. Debtor argued that Wells Fargo's security interest, while once valid, was no longer effective as to the Property because the parties had executed a mutual general release in the

settlement of a separate commercial dispute between the parties.[2]

On June 25, 2015, prior to the hearing on Wells Fargo's motion for relief from stay, Debtor commenced an adversary proceeding against Wells Fargo, challenging the validity of Wells Fargo's secured interest in the Property in light of the general release. The complaint included four claims for relief. The first two sought a determination of the extent, validity, and priority of Wells Fargo's Deed of Trust and security interest in the Property. In the third claim, Debtor, as the debtor-in-possession in the chapter 11 case, sought to avoid Wells Fargo's lien in the Property pursuant to § 544(a). And finally, the fourth claim for relief requested a declaration that all of Wells Fargo's claims and causes of action against Debtor and ATS had been released.

Despite Debtor's opposition, on July 6, 2015, the bankruptcy court granted Wells Fargo's motion and terminated the automatic stay. Even so, according to Wells Fargo, it was unable to conduct a trustee's sale due to the pending adversary proceeding.[3] Meanwhile, Wells Fargo filed a motion to dismiss

---

[2] In a deal negotiated by ATS's corporate counsel in January 2015, the settlement resolved a dispute regarding a debt ATS owed Wells Fargo.

[3] The effect of the adversary proceeding on Wells Fargo's ability to dispose of the Property is disputed. Wells Fargo argues, and the bankruptcy court stated in its later order dismissing the adversary proceeding, that the litigation prevented Wells Fargo from exercising its rights with respect to the Property. Debtor disputes this, contending that nothing prohibited Wells Fargo from foreclosing and selling the Property
(continued...)

-4-

the adversary proceeding for failure to state a claim, which Debtor opposed, and the bankruptcy court denied. Thereafter, in September 2015, Wells Fargo filed an answer to Debtor's complaint and a counterclaim against Debtor.

### 1. October 2015

On October 12, 2015, Wells Fargo's lawyer emailed Counsel requesting that they meet and confer about the adversary proceeding the following week and suggested two dates. Counsel did not respond.

On October 13, 2015, the bankruptcy court held a status hearing in the adversary proceeding attended by the parties' counsel. At the hearing, the bankruptcy court set a discovery deadline of March 31, 2016, and scheduled the trial for May 31, 2016. It also ordered Debtor to lodge a completed "Request for Assignment to Mediation Program; [Proposed] Order Thereon" (the "Mediation Order") within 15 days of the date of the hearing, and to lodge a scheduling order.

The day after the status hearing, Wells Fargo's lawyer emailed Counsel again and requested a response to the prior email requesting a meeting. Counsel responded, noting she had filed an answer to the counterclaim, but that she needed to file her personal tax returns before she could attend to the mediation papers.

On October 28, having heard nothing more from Counsel, Wells Fargo's attorney again emailed Counsel regarding preparation of

---

[3] (...continued) since the bankruptcy court had terminated the automatic stay.

the Mediation Order. Counsel responded by forwarding an incomplete request for assignment to mediation form without a proposed order. When Wells Fargo's lawyer informed Counsel that the materials she sent were incomplete, Counsel did not provide a meaningful response, nor did she supply a completed form or order.

### 2. November 2015

On November 6, 2015, Counsel underwent an invasive diagnostic test in her continued effort to determine the cause of her medical problems. Later that month, on November 20, Wells Fargo's lawyer sent Counsel another email reminding her that they needed to meet and confer quickly to comply with the bankruptcy court's order concerning mediation. Wells Fargo's attorney further noted that they also needed to make arrangements to conduct depositions of the parties. Counsel responded to this email, stating, "I have been working on another case intensively," and that she intended to send financial information on a potential purchaser of the Property. She further stated she would get back to Wells Fargo by Tuesday, November 24.

On November 23, Counsel met with a doctor from the speciality clinic. The doctor told her that the cause of her condition was still undetermined, but that she was cleared for a third surgery to resolve a condition resulting from the first two surgeries. Counsel did not contact Wells Fargo by November 24, so Wells Fargo's lawyer emailed her yet again, explaining that they were now approaching the discovery deadline, and that if Wells Fargo did not hear from Counsel by the next day, it would assume Debtor was not seriously pursuing settlement. Counsel did

not respond to this email.

On November 30, Wells Fargo's attorney again emailed Counsel. She expressed hope that they could schedule mediation in December and listed the mediators Wells Fargo would accept. Wells Fargo requested that Counsel advise of her choice of mediators and volunteered to prepare the mediation order in Counsel's stead. Further, because Counsel had failed to prepare the scheduling order as instructed by the bankruptcy court at the October 13 hearing, Wells Fargo's lawyer explained that she had prepared a scheduling order in her stead and planned to lodge it that day. Wells Fargo did so.

### 3. December 2015

On December 1, the bankruptcy court entered the scheduling order that Wells Fargo had lodged. It also entered an order directing Debtor to lodge a completed request for assignment to the mediation program by December 16. This order warned that Debtor's continued failure to comply with the bankruptcy court's orders "may result in the imposition of sanctions, including dismissal of the action for failure to prosecute."

At about this time, Counsel was attempting to schedule her latest surgery. While Counsel was originally scheduled for surgery on November 23, her surgeon delayed it. It was not until December 16, after Counsel consulted another specialist, that she was officially approved for surgery.

December 16 also happened to be the deadline for submission of the Mediation Order. Despite the developments concerning Counsel's health, the bankruptcy court's order had apparently spurred Counsel to action. On December 16, Counsel requested

-7-

signatures from Wells Fargo on a proposed Mediation Order. Wells Fargo's lawyer asked that minor changes be made; Counsel responded, "I am headed to the doctor. Why don't you make the changes[.]" Wells Fargo's attorney did so, and Wells Fargo gave Counsel its permission to submit the proposed Mediation Order that day. It also renewed its request to select mediation dates for the following month. Counsel responded that she had been cleared for surgery, and that she would provide dates once it was scheduled. She explained, "[i]f we have to mediate from my hospital bed we can do that, but my surgery is a priority."

### 4. January 2016

On January 11, 2016, Wells Fargo again reached out to Counsel regarding dates for a mediation, and served a Notice of Deposition and Request for Production of Documents. The deposition was set for February 17, 2016.

Counsel responded, indicating that she had drafted a settlement agreement and a proposed purchase and sales agreement ("PSA") for a potential purchaser of the Property. Counsel had intended to meet with the potential buyer that week, but she no longer could because her surgery was scheduled for that Friday. She proposed to discuss scheduling the following week because preparing for the surgery was commanding all of her energy and attention.

In response, Wells Fargo's lawyer expressed sympathy for Counsel's health issues and reminded her that it had attempted to accommodate her. However, Wells Fargo felt that Counsel's health problems had not been "the sole cause of the continuing delay," and that it doubted that a purchaser for the Property truly

-8-

existed. Counsel provided no meaningful response to this message.

Counsel had surgery on January 15, 2016. Her doctors advised her that she may experience fatigue for up to six weeks. On some date prior to January 26, Counsel sent Wells Fargo's lawyer an incomplete settlement agreement concerning the Property. When Wells Fargo requested more details, Counsel explained that she would begin to work on it, but that she was fatigued. Counsel indicated that she had sent the draft agreement because she wanted to ease Wells Fargo's criticism. During this message exchange, Wells Fargo again requested dates for mediation, but to no avail.

### 5. February 2016

Counsel emailed Wells Fargo's lawyer on February 11, 2016. She explained she had a draft of the PSA, and she planned to meet with the purchaser the following week. Counsel indicated that she still felt "foggy" from the surgery, and requested that the deposition be postponed. She offered to stipulate to an extension of the discovery deadline.

Wells Fargo responded that, given Counsel's continuing health concerns, it was willing to postpone the deposition to February 25 if Counsel would provide a fully executed PSA by February 19, and if she identified specific dates she would be available for mediation. Counsel refused to agree to these terms, stating that she would not identify the purchaser in fear that Wells Fargo may make an "end run" concerning a sale of the Property; Wells Fargo's counsel declined Counsel's offer to extend the discovery cutoff.

Significantly, Counsel did not ask the bankruptcy court for an order excusing compliance with the discovery notice, but instead, filed a pleading captioned "Objection to Notice of Deposition and Request for Continuance." Counsel represented that Debtor needed a continuance of the deposition due to the effects of Counsel's surgery on January 15. Counsel did not seek a hearing nor submit a proposed order in connection with the "objection." Counsel and Debtor did not appear for the deposition and did not produce the documents requested by Wells Fargo.

### 6.    March 2016; The Motion, Hearing, and Orders

On March 1, 2016, Wells Fargo filed a motion seeking dismissal of the adversary proceeding for Debtor's failure to prosecute and willful violation of court orders ("the Motion"). Wells Fargo argued that while it had attempted to accommodate Debtor and Counsel for months, it was now being forced to pursue the Motion due to Debtor's deliberate delay. In support of the Motion, Wells Fargo relied on Debtor's failure to abide by the bankruptcy court's order concerning mediation; to attend the deposition and produce documents; or to provide initial disclosures and conduct discovery. It also alleged that Debtor had failed to pursue either a settlement or sale of the Property, and had made misrepresentations designed to delay any sale.

Debtor opposed the Motion, arguing that dismissal was not warranted because any possible delays were caused by Counsel's serious health problems and were not related to any conduct of Debtor. Additionally, Debtor insisted that the only real delays he had caused stemmed from a failure to provide a substitute date

-10-

for the deposition and a failure to effectuate a settlement as rapidly as Wells Fargo wished, and that despite Counsel's health problems, she was still able to draft agreements for a potential purchaser, as well as for a settlement with Wells Fargo. Concerning discovery, Debtor contended that Wells Fargo had declined Counsel's good faith offers to resolve the timing dispute, and had failed to take required procedural steps regarding the resolution of discovery disputes before filing the Motion.

Prior to the hearing on the Motion, in an email to Wells Fargo's lawyer dated March 11, Counsel continued to assert that a sale of the Property was in process. When Wells Fargo requested evidence of a sale, Counsel did not respond. On March 14, Wells Fargo emailed Counsel asking for a response and for possible new deposition dates. Counsel again failed to provide any sale information, and declined to propose deposition dates. She told Wells Fargo's attorney that it made more sense to schedule a mediation first, though she proposed no dates for a mediation.

The bankruptcy court conducted the hearing on the Motion on March 23.[4] Counsel, along with an attorney for ATS, Debtor's corporation, appeared for Debtor. In defense to the Motion, Counsel described her health problems in detail. Counsel

---

[4] The bankruptcy court entered a tentative ruling shortly before the hearing. The ruling is not in the record provided to the Panel, but it apparently forewarned Debtor of the court's inclination to grant the Motion. Indeed, the findings of fact and conclusions of law attached to the bankruptcy court's orders on appeal stated that the additional information regarding Counsel's health concerns presented at the hearing did not alter the Court's tentative ruling.

-11-

admitted that she perhaps should not have taken Debtor's case because she was ill. ATS's counsel then provided some details about potential purchasers of the Property. He described the proposed deal as a "short sale," and indicated that it would include the Property and Debtor's business, but he did not specify a purchase price. As near as the Panel can tell, no evidence was submitted by Debtor to substantiate that a sale was in process. ATS's counsel told the bankruptcy court that Debtor had been personally unaware of any of the circumstances concerning the Mediation Order.

Following the hearing, on March 24, the bankruptcy court entered an order, attaching its findings of facts and conclusions of law, determining that the adversary proceeding would be dismissed with prejudice based upon Debtor's failure to prosecute pursuant to Rule 7041 and Civil Rule 41(b). The dismissal would occur on April 29, 2016, unless the parties reached a settlement concerning the Property prior to that date. The bankruptcy court also ordered that Counsel cease contact with Wells Fargo's lawyer, as their communications were unlikely to produce a settlement agreement, and directed that ATS's counsel assume the responsibility of seeking a settlement. Debtor filed a timely notice of appeal (BAP No. CC-16-1085) from this order.

When no settlement was reached by the parties, on May 9, the bankruptcy court entered an order confirming the finality of the order dismissing the adversary proceeding with prejudice. Debtor timely appealed (BAP No. CC-16-1129) this order as well.

### 7. Sale of the Property

At oral argument, Wells Fargo's counsel informed the Panel

-12-

that, after completion of appellate briefing, the Property had been sold as a result of the dismissal of the adversary proceeding. As requested by the Panel, after argument, Wells Fargo produced a "Trustee's Deed Upon Sale," which indicates that the foreclosure sale occurred on November 10, 2016, and that the buyer was a party unaffiliated with Wells Fargo. The Property sold for approximately $1.4 million.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B), (K), and (O). As explained below, despite the foreclosure sale, the Panel has jurisdiction over this appeal under 28 U.S.C. § 158.

## III. ISSUES

(1) Did the sale of the Property render this appeal moot?

(2) Did the bankruptcy court abuse its discretion when it dismissed Debtor's adversary proceeding against Wells Fargo with prejudice for failure to prosecute?

## IV. STANDARDS OF REVIEW

We review our own jurisdiction, including questions of mootness, de novo. Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014) (citing Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003)).

A bankruptcy court's order dismissing an adversary proceeding with prejudice for failure to prosecute is reviewed for an abuse of discretion. Moneymaker v. Coben (In re Eisen), 31 F.3d 1447, 1451 (9th Cir. 1994) (citing Morris v. Morgan Stanley & Co., 942 F.2d 648, 650 (9th Cir. 1991); Carey v. King,

-13-

856 F.2d 1439, 1440 (9th Cir. 1988)). A bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible, or without support in the record. See United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). "[T]he trial court's exercise of discretion should not be disturbed unless there is 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" In re Eisen, 31 F.3d at 1451 (citing Nealey v. Transportacion Maritima Mexicana, S.A., 662 F.2d 1275, 1278 (9th Cir. 1980)).

## V. DISCUSSION

### A. Mootness

At oral argument, Wells Fargo's counsel argued that, due to the very recent sale of the Property to a third party, these appeals are now moot. Of course, the Panel lacks jurisdiction over moot appeals, Hudson v. Martingale Invs., LLC (In re Hudson), 504 B.R. 569, 573 (9th Cir. BAP 2014) (citing I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 901 (9th Cir. 2001)), including those that become moot while the appeal is pending, In re Pattullo, 271 F.3d at 900.

Wells Fargo, as the party arguing for dismissal of this appeal based on mootness, "has the heavy burden of establishing that there is no effective relief remaining for a court to provide." Id. (citing Suter v. Goedert, 504 F.3d 982, 986 (9th Cir. 2007)). Despite this burden, Wells Fargo offered little to support its position.

Constitutional mootness[5] would deprive the Panel of jurisdiction in this appeal. "Constitutional mootness is jurisdictional and derives from the case-or-controversy requirement of Article III." Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966, 968 (9th Cir. 2016) (citing Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP 2008)). "A live case or controversy exists only if the parties have an interest in the outcome of the litigation." In re PW, LLC, 391 B.R. at 33 (citing Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps., 466 U.S. 435, 442 (1984)). Thus, "[t]he test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor." In re Castaic Partners II, LLC, 823 F.3d at 968–69 (citing Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012)).

"If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot . . . ." Foster

---

[5] While equitable mootness may, in some circumstances, prevent the Panel from deciding an appeal on the merits, Wells Fargo has not argued that it applies in this case, and the Panel agrees that application of the equitable mootness doctrine is inappropos under these facts. See JPMCC 2007–C1 Grasslawn Lodging, LLC v. Transwest Resort Props. Inc. (In re Transwest Resort Props., Inc.), 801 F.3d 1161, 1167 (9th Cir. 2015) (stating, "[a]n appeal is equitably moot if the case presents transactions that are so complex or difficult to unwind that debtors, creditors, and third parties are entitled to rely on the final bankruptcy court order").

v. Carson, 347 F.3d 742, 745 (9th Cir. 2003). However, "while a court may not be able to return the parties to the status quo ante . . ., an appeal is not moot if the court can fashion some form of meaningful relief . . . ." In re Pattullo, 271 F.3d. at 901 (citing United States v. Arkison (In re Cascade Rds.), 34 F.3d 756, 756 (9th Cir. 1994)).

For example, in one case, a chapter 7 trustee sued the appellant to quiet title to a parcel of real property. Bateman v. Grover (In re Berg), 45 B.R. 899, 900 (9th Cir. BAP 1984). The bankruptcy court ruled that the appellant had no interest in the property, and it was sold while the order quieting title was on appeal. Id. However, the Panel held that the appeal was not moot. Id. at 902. The Panel explained that the appellant was not appealing the order authorizing sale of the property, but the order quieting title in the trustee, and, it concluded, that while the appellant may be precluded from having title to the property revested in him, the appeal was not moot because appellant was not precluded from recovering a monetary award. Id.

In another case, the bankruptcy court authorized the sale of property and a distribution of the proceeds to a secured creditor despite the IRS's objection and assertion it held a senior lien on the property. I.R.S. v. Valley Nat'l Bank (In re Decker), 199 B.R. 684, 685 (9th Cir. BAP 1996). The Panel held that, despite the sale of the property, the appeal of the bankruptcy court's decision was not moot because "[w]here the order appealed involves the distribution of funds and the party who received the funds is a party to the appeal, the appeal is

-16-

not moot because the appellate court has the power to fashion effective relief." Id. at 687 (citing Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006-07 (9th Cir. 1993)).

Undoubtedly, here, Debtor's ultimate goal in the adversary proceeding was to prevent Wells Fargo from selling the Property. However, a sale to a third party has occurred, and the buyer's rights can not now be disturbed. Even so, if we reverse the bankruptcy court's order dismissing the adversary proceeding, we are persuaded that the bankruptcy court could fashion some form of meaningful relief for Debtor.

As in In re Berg, Debtor did not appeal the termination of the automatic stay, the bankruptcy court's order that allowed Wells Fargo to sell the Property. Debtor is appealing the dismissal of his adversary proceeding, which sought to determine the extent and validity of Wells Fargo's interest in the Property, and to avoid its lien under § 544(a). If Debtor prevails on his avoidance claim, the bankruptcy court could make a monetary award to Debtor. See § 550(a) (if a transfer is avoided, a trustee "may recover, for the benefit of the estate, the property transferred, **or, if the court so orders, the value of such property**" from the transferee) (emphasis added). And, as in In re Decker, the foreclosure sale generated cash proceeds, which were paid to Wells Fargo, a party to this appeal. The issue of Wells Fargo's entitlement to those proceeds remains a live controversy, and depending on the outcome of the litigation, Debtor could presumably benefit from recovery of proceeds.

Moreover, Debtor's fourth claim to relief sought a declaration from the bankruptcy court concerning the status of

-17-

the debt Debtor owed Wells Fargo. In determining whether a request for declaratory relief has become moot, "'the question . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Pub. Utils. Comm'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1458 (9th Cir. 1996) (citing Preiser v. Newkirk, 422 U.S. 395, 402 (1975)). The dispute over the effect of the release executed by the parties on the debt secured by the Property remains a sufficiently immediate and real controversy concerning Wells Fargo's and Debtor's adverse legal interests.

We conclude that these appeals are not moot.

**B.    Failure to Prosecute**

Civil Rule 41(b), made applicable in adversary proceedings by Rule 7041, provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the actions or any claim against it." In the Ninth Circuit, when considering whether to dismiss an action for lack of prosecution or failure to obey court orders, a bankruptcy court is instructed to weigh five factors:

> (1) the public's interest in expeditious resolution of litigation;
>
> (2) the court's need to manage its docket;
>
> (3) the risk of prejudice to the defendants;
>
> (4) the public policy favoring the disposition of cases on their merits; and
>
> (5) the availability of less drastic sanctions.

In re Eisen, 31 F.3d at 1451 (citing Henderson v. Duncan,

-18-

779 F.2d 1421, 4123 (9th Cir. 1986)); Tevis v. Cal. Dep't of Veteran Affairs (In re Tevis), BAP No. EC-15-1111-TaJuD, 2016 WL 3752918, *2 (9th Cir. BAP 2016). These factors are "not a series of conditions precedent . . . but a way for a [bankruptcy] judge to think about what to do." In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 460 F.3d 1217, 1226 (9th Cir. 2006) (citations omitted).

Here, the bankruptcy court made explicit findings and conclusions and provided a detailed explanation concerning its application of each of these factors. In sum, the court held that the public policy in favor of disposition of cases on the merits did not outweigh the other relevant factors, particularly Debtor's unreasonable delay in prosecuting the adversary proceeding. Debtor argues the bankruptcy court abused its discretion concerning each factor that it concluded weighed in favor of dismissal. Below, we review the bankruptcy court's analysis of each factor in turn, and its ultimate conclusion.

### 1. The Expeditious Resolution of Litigation

A bankruptcy court must find "unreasonable delay" has occurred to dismiss an adversary proceeding for lack of prosecution. In re Eisen, 31 F.3d at 1451 (citing Henderson, 779 F.2d at 1423). We must defer to the bankruptcy court to decide what is unreasonable in particular actions "because it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." Id. (citations omitted).

Debtor argues that, through Counsel, he took numerous steps to prosecute this action, namely, promptly serving the summons;

-19-

filing a status report; answering the Wells Fargo counter claim; attending the status conference; and objecting to the notice of deposition. To Debtor, any failure to prepare and submit a timely Mediation Order, and not responding to "meet and confer" requests by Wells Fargo, are insufficient to support a finding of unreasonable delay under these facts.

But Debtor's characterizations of the extent of the delays miss the mark. While Debtor did take some steps to prosecute the litigation in its early stages, he and Counsel engaged in more delays than simply filing a late Mediation Order and declining to respond to "meet and confer" requests. Indeed, the question presented here is not whether Debtor engaged in delay, because he undisputably did, but whether that delay was unreasonable.

Analyzing this question, the bankruptcy court considered Debtor's failure to timely file the mediation order, despite numerous requests from Wells Fargo to do so, and his continued failure to do so until after the bankruptcy court entered an order indicating further delay may result in the imposition of sanctions. It also detailed Counsel's repeated and continued failure to provide possible dates for the mediation, which, to the court, demonstrated "a serious lack of diligence." The bankruptcy court highlighted Debtor's failure to appear at the deposition and found his attempts to be excused from doing so woefully insufficient. And it also noted Debtor's continued refusal to provide new deposition dates despite the imminent discovery cutoff date. Finally, the bankruptcy court concluded that Counsel's assertions regarding a possible private sale of the Property did not mitigate Debtor's unreasonable delay and

were not meaningful attempts to resolve the action, because the one draft agreement provided to Wells Fargo by Counsel failed to contain many materials terms, and no other competent evidence regarding the sale was before the court.

The record supports the bankruptcy court's conclusion that, taken together, these delays were unreasonable under the circumstances. While some delay may have been unavoidable, here, given the simple nature of the tasks assigned by the bankruptcy court to Counsel and the number of delays, the Panel declines to conclude that the bankruptcy court abused its discretion in finding there was unreasonable delay, and that the public's interest in expeditious litigation weighed in favor of dismissal. This is especially true given Wells Fargo's active role in attempting to work with Debtor and Counsel throughout the process.

**2.    The Bankruptcy Court's Need to Manage its Docket**

This factor is usually reviewed in conjunction with the first. In re Eisen, 31 F.3d at 1452. Bankruptcy courts have a responsibility, and the inherent power, to control their dockets, which includes the power to impose sanctions, such as, where appropriate, default or dismissal. In re PPA, 460 F.3d at 1227. Here, too, we afford the bankruptcy court deference because it knows best when its docket could become unmanageable. Id. (citation omitted).

The bankruptcy court explained that a party's failure to abide by the schedules and deadlines it establishes disrupts its other conference and trial dates, which it must carefully allocate to balance multiple pending adversary proceedings. The

-21-

bankruptcy court therefore found this factor weighed in favor of dismissal because Debtor's unreasonable delay made it impossible to maintain the court-ordered discovery deadline, and pretrial conference and trial dates, without prejudicing Wells Fargo.

Debtor and Counsel question whether the bankruptcy court abused its discretion by unduly considering its calendar, but they fail to cite any supporting authority for this proposition. On the other hand, the record shows that here, Debtor's delays prevented the parties from concluding discovery by the deadline imposed by the bankruptcy court, and jeopardized the trial date.

Again, we decline to disturb the bankruptcy court's conclusion regarding how Debtor's failure to comply with the court's instructions negatively impacted its docket, or its decision that this factor weighed in favor of dismissal.

### 3. The Risk of Prejudice to Wells Fargo

"[T]he failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant . . . ." In re Eisen, 31 F.3d at 1452 (citations omitted). However, if a plaintiff can provide an excuse for its conduct that is "anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice." Id. at 1453. Trial courts must exercise discretion by weighing time, excuse, and prejudice to determine "whether there is sufficient delay or prejudice to justify a dismissal of [Debtor's] case." Id.

Debtor argues that Counsel's serious health problems experienced during this action, including the surgery and the fatigue Counsel suffered during recovery, constituted a

-22-

sufficient, non-frivolous excuse to shift the burden to Wells Fargo to show some actual prejudice caused by any delay. And he contends that if required to demonstrate prejudice, Wells Fargo would have been incapable of doing so.

However, although the bankruptcy court expressly considered Counsel's health issues, it still found that Debtor had not demonstrated a non-frivolous excuse for engaging in unreasonable delay. In reaching its conclusion, the bankruptcy court stated that, while it never doubted that Counsel's health issues occurred, the delays in this action could not be attributed solely to Counsel's health challenges. It noted that Counsel's original failure to lodge an order assigning the matter to mediation following the October status hearing occurred well before her January surgery. The bankruptcy court also pointed out that Counsel's refusal to work with Wells Fargo to select a mediation date extended well past the date of Counsel's surgery.

Concerning Debtor's failure to attend the deposition, the bankruptcy court acknowledged that Counsel was likely fatigued, but it concluded that such explanation was an insufficient excuse given the length of time between the surgery and the scheduled deposition date. Moreover, even if Counsel's illness was a proper reason to postpone the deposition, she offered no defensible excuse for her failure to file a proper motion seeking a protective order. In addition, the bankruptcy court noted Counsel's offer to Wells Fargo to extend the discovery cutoff deadline would only have resulted in further delay.

The bankruptcy court did not abuse its discretion in deciding that Debtor failed to provide a non-frivolous excuse for

-23-

his unreasonable delay, despite Counsel's health concerns. There is sufficient evidence in the record to support the bankruptcy court's conclusion that the unreasonable delay was not caused solely by Counsel's health issues. Indeed, on one occasion, Counsel informed Wells Fargo that she could not cooperate in scheduling a mediation because she was working on her personal taxes, and on another, because she was working intensively on a different case. Moreover, as the bankruptcy court found, Debtor's initial delay in complying with the court's order occurred well before her January surgery, and her delay continued long after.

While Counsel was in the process of seeking a medical diagnosis during the relevant time frame, this alone provides an insufficient excuse. During this time, Wells Fargo attempted to accommodate Counsel's health concerns, including undertaking portions of the responsibilities assigned to her. As for Debtor's failure to attend the deposition, Counsel voluntarily declined Wells Fargo's offer to delay the deposition.

Counsel's health challenges were certainly worthy of serious consideration, and the bankruptcy court did so. Though there is room for debate, the Panel cannot conclude that the court abused its discretion in deciding that Debtor did not provide a non-frivolous reason for his unreasonable delay.[6]

_____

[6] The bankruptcy court made no findings or conclusions about any prejudice Wells Fargo may have experienced as a result of Debtor's delay in prosecuting the adversary proceeding. While Debtor disputes that Wells Fargo was prejudiced, and while Wells Fargo insists that the pendency of the adversary proceeding
(continued...)

## 4. Disposition of the Case on the Merits

"Courts weigh this factor against the plaintiff's delay and the prejudice suffered by the defendant." In re Eisen, 31 F.3d at 1454. The bankruptcy court balanced these factors and ultimately determined that any interest in resolving the action on the merits did not outweigh the other factors that favored dismissal. No basis has been shown to disturb this holding.

Though the bankruptcy court acknowledged that this factor weighed in favor of not dismissing the adversary proceeding, Debtor dedicated a portion of his brief to arguing that, because his claims are meritorious, he should be allowed to proceed to trial. But to clarify, the Panel "need not scrutinize the merits of a case when reviewing a dismissal." Id. at 1447; In re Tevis, 2016 WL 3752918 at *4. As the Ninth Circuit has explained:

> [w]hile the strength or weakness of the plaintiff's case may be a factor in determining the harshness of dismissal in a particular case, the court should not closely scrutinize the merits of an action when reviewing an order of dismissal. Even if the plaintiff has an obviously strong case, dismissal would be appropriate if the plaintiff has clearly ignored his responsibilities to the court in prosecuting the action and the defendant had suffered prejudice as a result thereof.

In re Eisen, 31 F.3d at 1454 (quoting Anderson v. Air West, Inc., 542 F.2d 522, 526 (9th Cir. 1976)). Here, the bankruptcy court made clear findings detailing Debtor's delay. We decline Debtor's invitation to scrutinize the merits of the action since

---

[6](...continued)
precluded it from selling the Property, arguing that a purchaser would not want to "buy a lawsuit," the Panel expresses no opinion on this issue.

its dismissal was appropriate regardless of the strength of his claims.

### 5. Less Drastic Sanctions

A bankruptcy court abuses its discretion "if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." In re PPA, 460 F.3d at 1228 (citations omitted). The Ninth Circuit has identified three factors that indicate whether a trial court has adequately considered alternatives: (1) Did the trial court discuss alternative sanctions and why they were inadequate? (2) Did that court implement alternative methods of sanctioning before ordering dismissal? (3) Did the court warn the plaintiff that dismissal was possible before ordering dismissal? Id. at 1228-29. Indeed, a warning that failure to obey a court order will result in dismissal may alone meet the "consideration of alternatives requirements." Id. at 1229.

Debtor argues that the bankruptcy court abused its discretion for failing to impose alternative, less drastic sanctions than dismissal. We disagree.

Here, the bankruptcy court did not ignore its responsibility, but instead, specifically discussed in its order whether less drastic sanctions were appropriate. It noted that though its December order warned Debtor of a possible dismissal for failure to prosecute, Debtor, or Counsel, were apparently not sufficiently motivated to cooperate with Wells Fargo in scheduling a mediation or a deposition. It also found that, in its view, monetary sanctions would not adequately compensate Wells Fargo for its inability to foreclose on the Property

-26-

because Debtor had already failed to make payments on the Loan for almost three years,[7] and, given the continued losses Debtor reported in the chapter 11 case, Debtor would likely be unable to pay any sanctions even had they been awarded.[8]

Moreover, the bankruptcy court did not impose an immediate dismissal of the adversary proceeding in its order. Instead, the bankruptcy court afforded Debtor an additional month to negotiate with Wells Fargo before its order dismissing the adversary proceeding would become final. To the Panel, this constitutes a less drastic sanction than immediate dismissal.

The bankruptcy court did not abuse its discretion because it carefully considered the impact of the dismissal sanction and decided that less drastic sanctions would have been inadequate under these facts.

### 6. Attorney Delay versus Client Delay

Debtor argues that the bankruptcy court abused its discretion in dismissing the action because the delays were not caused by Debtor, but by Counsel. The bankruptcy court correctly rejected this argument, referring to the Supreme Court's decision

---

[7] At oral argument, Debtor contended that the bankruptcy court had inappropriately considered events that had occurred prior to the adversary proceeding. But the only record of any such consideration is the bankruptcy court's conclusion that monetary sanctions would be insufficient because Debtor had "failed to make any payments on the loan secured by the Property for three years." Such an observation is not inappropriate when attempting to determine the likelihood of Debtor's ability to adequately compensate Wells Fargo for further delay.

[8] According to the bankruptcy court, Debtor's schedule J showed monthly negative cash flow of approximately $500.

in <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626 (1962). There, in considering the dismissal of an action for failure to prosecute, the Court stated:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

<u>Id.</u> at 633-34; <u>see also Tong Seae (U.S.A.), Inc. v. Edmar Corp. (In re Tong Seae (U.S.A.)), Inc.</u>, 81 B.R. 593, n.4 (9th Cir. BAP 1988) (stating "It is clearly recognized that the 'plaintiffs cannot avoid . . . dismissal by arguing that [they are] innocent part[ies] who will be made to suffer for the errors of their attorney.'") (citing <u>Hamilton v. Neptune Orient Lines, Ltd.</u>, 811 F.2d 498, 500 (9th Cir. 1987)). Here, too, Debtor cannot avoid the consequences of his attorney's acts and omissions.

Counsel correctly notes that the Fifth Circuit considers the degree of fault attributable to parties, as opposed to their counsel, in its analysis of whether to dismiss an action for failure to prosecute. <u>See</u> <u>Ford v. Sharp</u>, 758 F.2d 1018, 1021 (5th Cir. 1985). However, under the Ninth Circuit's test, which controls here, the bankruptcy court need not engage in such an analysis. The bankruptcy court applied the correct standard in dismissing Debtor's action, and given the deferential standard of review to be applied here, we conclude that the bankruptcy court did not abuse its discretion in declining to excuse Debtor for the delays caused by Counsel.

## VI. CONCLUSION

As required by the controlling authorities, we defer to the

-28-

bankruptcy court's discretion in deciding that Debtor's adversary proceeding should be dismissed. The bankruptcy court's orders are AFFIRMED.[9]

---

[9] While the bankruptcy court dismissed the adversary proceeding for Debtor's unreasonable delays in prosecuting it, Wells Fargo argues that the bankruptcy court's orders should also be affirmed based upon Debtor's violation of rules and court orders. It correctly notes that, in addition to delay, Civil Rule 41(b) provides that dismissal is warranted "[i]f the plaintiff fails . . . to comply with these rules or a court order . . . ." The Ninth Circuit applies the same general principles to evaluate a dismissal for failure to prosecute and a dismissal for violations of court orders. See In re PPA, 460 F.3d at 1226 (discussing dismissal for violation of court orders); In re Eisen, 31 F.3d at 1451 (discussing dismissal for failure to prosecute). Because the Panel affirms the bankruptcy court's decision dismissing the action for delay, we need not address any alternate grounds supporting that outcome.